**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| MERCER GLOBAL ADVISORS INC., | |
| Plaintiff, | |
| v. | Civil Action No. _____ |
| KEVIN LAMAR RAINWATER, | **COMPLAINT** |
| Defendant. | |

Plaintiff Mercer Global Advisors Inc. ("Plaintiff" or "Mercer"), by and through its undersigned attorneys, as and for its Complaint against Defendant Kevin Lamar Rainwater ("Defendant" or "Rainwater"), alleges and sets forth as follows:

## NATURE OF THE ACTION

1. Mercer provides financial planning, investment management, and other financial services to individuals and businesses across the United States. Rainwater joined Mercer as a Senior Wealth Advisor on November 1, 2021 pursuant to Mercer's acquisition of substantially all of the assets of Rainwater's prior employer, ACG Wealth, Inc. ("ACG"), including its client lists, client relationships, and all other rights and properties.

1

2.      On October 29, 2021, Rainwater executed an Employment Agreement ("EA") (Ex. A) and a Confidentiality and Restrictive Covenant Agreement ("RCA") (Ex. B) as a condition of becoming a Mercer employee.

3.      As detailed further below, Rainwater's EA and RCA prohibited him from copying or using Mercer's confidential client information for any purpose other than advancing Mercer's business interests, both during his employment and after termination.  The EA and RCA explicitly prohibit Rainwater from soliciting the Mercer clients with whom he worked or about whom he obtained confidential information through his employment with Mercer.

4.      Nonetheless, in contravention of his EA, his RCA, and the fiduciary duties owed to Mercer, Rainwater, on the day of his resignation, accessed and downloaded Mercer's confidential client information, including but not limited to its highly proprietary client lists.  Rainwater then used Mercer's confidential client information in his efforts to solicit Mercer's customers almost immediately following his resignation.

5.      On October 25, 2023 and October 26, 2023, Mercer learned that the financial accounts of several of Mercer's clients had been "delinked" from Mercer by an unknown third party.  When an account is delinked, Mercer is no longer the

registered investment advisor for that account and Mercer personnel can no longer manage the account for the associated client.

6.    Mercer's investigation determined that the delinkings were done *en masse*, because the affected accounts were delinked at virtually the same time. Mercer personnel determined that the delinkings were almost certainly, therefore, done by a single person, who obtained Mercer's clients' authorizations to remove Mercer as the clients' registered investment advisor, using a confidential list of Mercer's client names and account information.

7.    Mercer's investigation also determined that virtually every one of the accounts that delinked *en masse* were associated with a Mercer client that Defendant Rainwater serviced, and about whom Defendant Rainwater gained Confidential Information, while he was a Mercer employee.

8.    Defendant's unlawful conduct has caused significant and irreparable harm to Mercer and, if not enjoined, will cause serious additional significant and irreparable harm.

9.    Mercer seeks injunctive and monetary relief against Rainwater for breach of contract, trade-secret misappropriation under the Georgia Trade Secrets Act of 1990, O.C.G.A. § 10-1-760 *et seq.*, and breach of Rainwater's duty of loyalty.

## PARTIES

10.    Plaintiff Mercer Global Advisors Inc. is a Delaware corporation with its principal place of business in Denver, Colorado, and offices across the country, including at 5901-B Peachtree Dunwoody Road, Suite 275, Atlanta, GA 30328.

11.    Defendant Kevin L. Rainwater is a natural person who is, and at all relevant times, has been a resident of Fulton County, Georgia, residing at 312 Delmont Dr NE, Atlanta, Georgia 30305.

## JURISDICTION AND VENUE

12.    This Court has personal jurisdiction over Defendant because Defendant resides and transacts business within the State of Georgia, and committed the wrongful conduct alleged herein in the State of Georgia.

13.    This Court has subject matter jurisdiction because Plaintiff and Defendant are diverse, and the amount in controversy, including the prevailing party's entitlement to recover its costs and attorneys' fees (Ex. B at 9 (§ 14 of RCA)) exceeds $75,000.

14.    Venue in this Court is proper under LR 3.1(B)(1)(a), because Rainwater resides in Fulton County, a county within this District.  Venue is also proper under LR 3.1(B)(3), because the wrongful activity giving rise to the causes of action stated herein occurred within the Atlanta Division of this District.

4

15. Further, the Parties have agreed that any dispute concerning Rainwater's RCA shall be brought only in a court of competent jurisdiction in Fulton County, Georgia. Ex. B at 9 (§ 17 of RCA).

## FACTS

### Mercer's Business and M&A Strategy

16. Mercer provides financial planning, investment, and other financial services to individuals and businesses across the United States. Founded in 1985, Mercer is one of the nation's most recognized names in investment management, managing approximately $52 billion in assets.

17. Mercer invests significant amounts of money, time, and resources to developing and maintaining existing and prospective client relationships. Mercer's client-acquisition costs are high, and it dedicates significant resources to acquiring new clients in the hypercompetitive financial services industry, including by acquiring or merging with other wealth management firms. To safeguard this investment, Mercer requires all of its new employees, as a condition of employment, to sign certain agreements that clearly identify the proprietary and confidential nature of its client lists and information.

18. Mercer entered the M&A market in 2016, and since that time has completed more than 80 acquisitions adding over $36 billion in assets under

5

management ("AUM").  Mercer takes care when evaluating whether to acquire a particular firm.  Its decision whether to acquire is based on each target firm's pro forma profitability, which is highly dependent on the target firm's AUM and revenue retained after closing.  These figures, in turn, form the basis of each acquisition's carefully negotiated purchase price.  As such, any post-closing reduction of revenue caused by the loss of one or more clients results in a much greater reduction in profit realized from the acquisition, and Mercer, as a result, takes a significant loss on the benefit of the carefully negotiated bargain.

19.    Mercer's strategy is intended to further its goal of building a single operating model that has scale, national brand awareness, and the ability to provide a consistent high-quality customer experience across offices and states.  Mercer is a fully institutionalized business and acquires nothing less than 100% of the outstanding ownership interests or operating assets of each of its targets.

**Mercer's Protectable Interests**

20.    Mercer maintains robust and confidential information on its existing and prospective clients, including client identities, biographical information, risk tolerance, investment preferences, financial plans, tax returns, estate plans, insurance needs, and all other investment and performance information, both for investments and assets held by Mercer and for those at other financial institutions.

21.     Mercer takes substantial steps to protect this high-value Mercer confidential information regarding its existing and prospective clients.  These steps include entering into strict confidentiality agreements with its employees (described below).  In addition, Mercer maintains the database that stores its confidential client information protected with a password and login requirement so that only authorized Mercer employees can access the information.  Mercer limits each Wealth Advisor's access to client information to only that information relating to clients that the Wealth Advisor is responsible for servicing. The hard drives of all Mercer-issued laptops are encrypted, and each employee's Mercer-issued laptop and other electronic devices must be password protected before Mercer's confidential information can be stored on them.

22.     Further, Mercer's legal and compliance departments train and educate employees on protecting Mercer's confidential information to safeguard these valuable assets and comply with governing Securities and Exchange Commission privacy regulations.  Mercer also instructs its employees about the importance of maintaining the confidentiality of Mercer proprietary information, including confidential client information, through its employee handbook and other documents outlining Mercer's policies and procedures.

23. Mercer invests significant amounts of money in obtaining new clients and in protecting Mercer's confidential information pertaining to its existing and prospective clients.

**Rainwater's Employment History with Mercer**

24. In 2021, Mercer acquired Rainwater's prior employer, ACG, along with ACG's client lists, client relationships, and all other rights and properties.

25. In connection with its acquisition of ACG, Mercer hired Rainwater as a Senior Wealth Advisor, and Rainwater agreed to undertake certain contractual obligations to Mercer. As a condition of his employment, Rainwater signed the RCA and EA, both of which are dated October 29, 2021. See Ex. A at 1, Ex. B at 1.

26. Rainwater's EA and RCA both took effect on November 1, 2021. *Id.*

27. Rainwater resigned his employment with Mercer on August 23, 2023. Following a thirty (30)-day transition period required by his RCA, Rainwater's employment with Mercer was terminated on September 21, 2023.

28. On October 26, 2023, Mercer sent a letter to Rainwater reminding him of his continuing obligations under the RCA, including his nonsolicitation and confidentiality covenants contained therein. The letter also demanded that Rainwater cease and desist from soliciting Mercer clients and that he immediately

return any of Mercer's confidential information that remained in his possession, custody, or control.  Ex. C.

29.    On October 26, 2023, Rainwater responded by email to Mercer's counsel, stating:

> I have copied my attorney on this email in response to your letter.  We respectfully disagree with and deny all allegations set forth in the letter attached to your email dated today and time stamped at 4:19 PM.  There are no items to return and we will respond appropriately once we have had time to review the letter and it's [sic] contents.

Ex. D (email from rainwater.kevin@yahoo.com).

**Selected Provisions of Mercer's Agreements with Rainwater**

30.    The terms of the RCA survive the termination of Rainwater's employment with Mercer.  Ex. B at 10 (§ 20 of RCA).

31.    As part of his EA, Rainwater undertook a duty of loyalty to Mercer. Ex. A. at § 1.3 ("Employee shall loyally, conscientiously, and professionally do and perform all duties and responsibilities assigned by Employer and the Employee's supervisors.").

32.    Rainwater expressly acknowledged in his RCA that "the industry in which [Mercer] conducts business is highly competitive and that the Confidential Information constitutes valuable, special, and unique assets of [Mercer's], which [Mercer] uses in its business to obtain a competitive advantage over [Mercer's]

competitors that do not know or use this information." Ex. B at 2 (§ 2 of RCA). Rainwater also acknowledged that "prior to [Rainwater's] employment with [Mercer], [Rainwater] did not have access to the Confidential Information, and would not otherwise have had such Confidential Information available to him/her through any other source." *Id*.

33.     Rainwater further agreed that within 24 hours of his resignation, he would return to Mercer all of its "written or electronic materials, data, information, records, and any other documents or property … in [Rainwater's] possession or control, whether located on or off [Mercer's] premises." *Id.* at 4 (§ 5 of RCA).

34.     In addition, Rainwater entered into a nonsolicitation covenant by which he agreed that, for 24 months following his termination, he would not "solicit or counsel … any Restricted Client to terminate any business relationship with [Mercer] … [or] influence, induce, or encourage any Restricted Client to discontinue, reduce, or materially change its relationship or business with [Mercer]." *Id.* at 6 (§ 8(c)(i) of RCA).

35.     The Restricted Clients include those Mercer clients "with whom [Rainwater] worked, directly or indirectly… or about whom [Rainwater] received or had access to Confidential Information, during the twenty-four (24) month period preceding the termination of [his] employment." *Id.*  Mercer Wealth Advisors are

10

permitted to exclude their family members from the nonsolicitation covenant. Rainwater chose to identify four (4) family members for exclusion. *Id*. at 13. This carve out permitted Defendant Rainwater to solicit and work with those four family member-clients—but *only those four*—immediately upon his termination from Mercer. *Id*.

36.     Rainwater also agreed that "[i]n the event a dispute arises between the Parties relating in any way to this Agreement and legal action is instituted, by either Party, the prevailing Party shall be entitled to recover its reasonable costs and attorneys' fees (including paralegal fees) from the non-prevailing Party. As used herein, costs and attorneys' fees (including paralegal fees) include any costs and attorneys' fees in any appellate proceeding." *Id*. at 9 (§ 14 of RCA).

**Rainwater is Misappropriating Mercer's Trade Secrets and Wrongfully Soliciting Mercer's Clients**

37.     Rainwater has intentionally misappropriated and used Mercer's trade secrets, including its Confidential Client Information.

38.     On information and belief, Rainwater has used Mercer's trade secrets and Confidential Client Information to solicit Mercer clients to his new employer and away from Mercer.

39.     Mercer retains FTI Consulting, a third-party computer forensics analyst, to analyze the Mercer-issued laptops of departing Wealth Advisors. FTI

11

Consulting's analysis of Rainwater's Mercer-issued laptops determined that just before and just after resigning, Rainwater repeatedly accessed a document including Mercer's confidential client information pertaining to clients whom Rainwater serviced as a Mercer employee. On the day of his resignation, Rainwater accessed and downloaded Mercer's confidential information, including but not limited to its highly proprietary client lists. On information and belief, Rainwater improperly retained a copy of at least one document including Mercer's confidential client information, after termination of his employment with Mercer.

40. On or about October 11, 2023, Rainwater openly solicited business from Mercer's client Medical Association of Georgia ("MAG"), by making a sales presentation to the MAG personnel who are responsible for MAG's multiple employer retirement plan.

41. On October 25, 2023 and October 26, 2023, Rainwater caused multiple Mercer clients to discontinue, reduce, or materially change their relationships with Mercer by delinking their accounts from Mercer's management. Every one of the accounts delinked on those days was an account Rainwater serviced while he was Mercer employee.

42. On information and belief, Rainwater has used and intends to continue using Mercer's Confidential Client Information, including Mercer's client lists, in his efforts to solicit clients away from Mercer.

## FIRST CAUSE OF ACTION
### (Breach of Contract - Solicitation)

43. Rainwater has breached each of the contractual provisions identified and described above.

44. Rainwater breached his contractual duty not to solicit Mercer's customers.

45. Rainwater's breaches have caused and will continue to cause both pecuniary and non-pecuniary damage to Mercer.

46. Mercer is entitled to compensatory damages in partial redress of the harm caused by Rainwater's breaches.

47. Mercer is further entitled to recover its costs and attorneys' (including paralegal fees) fees. *See* Ex. B at 9 (§ 14 of RCA).

48. In addition to compensable harms, Rainwater's breaches also cause and have caused irreparable harm to Mercer.

49. As Rainwater has specifically acknowledged, remedies at law for any breach of covenants in the RCA are inadequate. *Id.* at 8 (§ 12 of RCA) ("[M]oney

damages would not be a sufficient remedy for any breach of this Agreement by [Rainwater].")

50. The harm to Mercer from failure to enjoin Rainwater's continued breaches outweighs any harm to Rainwater from enjoining them.

51. The public interest is served by enforcing the terms of the EA and RCA.

52. Mercer is entitled to injunctive relief to prevent further injury from Rainwater's breaches of the RCA. *Id.* ("[Mercer] shall be entitled to enforce its rights under this Agreement by injunctive relief in addition to all remedies available at law or in equity.")

## SECOND CAUSE OF ACTION
### (Breach of Contract - Confidentiality)

53. Rainwater has breached each of the contractual provisions identified and described above.

54. Rainwater breached his contractual duty not to copy or use Mercer's confidential client information other than for Mercer's benefit.

55. Rainwater breached his contractual duty to return Mercer's confidential client information to Mercer upon the termination of his employment.

56. Rainwater's breaches have caused and will continue to cause both pecuniary and non-pecuniary damage to Mercer.

57. Mercer is entitled to compensatory damages in partial redress of the harm caused by Rainwater's breaches.

58. Mercer is further entitled to recover its costs and attorneys' (including paralegal fees) fees. *See* Ex. B at 9 (§ 14 of RCA).

59. In addition to compensable harms, Rainwater's breaches also cause and have caused irreparable harm to Mercer.

60. As Rainwater has specifically acknowledged, remedies at law for any breach of covenants in the RCA are inadequate. *Id.* at 8 (§ 12 of RCA) ("[M]oney damages would not be a sufficient remedy for any breach of this Agreement by [Rainwater].")

61. The harm to Mercer from failure to enjoin Rainwater's continued breaches outweighs any harm to Rainwater from enjoining them.

62. The public interest is served by enforcing the terms of the EA and RCA.

63. Mercer is entitled to injunctive relief to prevent further injury from Rainwater's breaches of the RCA. *Id.* ("[Mercer] shall be entitled to enforce its rights under this Agreement by injunctive relief in addition to all remedies available at law or in equity.")

## THIIRD CAUSE OF ACTION
### (Breach of Contract – Duty of Loyalty)

64.    Rainwater has breached each of the contractual provisions identified and described above.

65.    Rainwater breached his contractual duty of loyalty by acting for his own benefit and to the detriment of Mercer.

66.    Rainwater's breaches have caused and will continue to cause both pecuniary and non-pecuniary damage to Mercer.

67.    Mercer is entitled to compensatory damages in partial redress of the harm caused by Rainwater's breaches.

68.    Mercer is further entitled to recover its costs and attorneys' (including paralegal fees) fees.  *See* Ex. B at 9 (§ 14 of RCA).

69.    In addition to compensable harms, Rainwater's breaches also cause and have caused irreparable harm to Mercer.

70.    As Rainwater has specifically acknowledged, remedies at law for any breach of covenants in the RCA are inadequate.  *Id.* at 8 (§ 12 of RCA) ("[M]oney damages would not be a sufficient remedy for any breach of this Agreement by [Rainwater].")

71.    The harm to Mercer from failure to enjoin Rainwater's continued breaches outweighs any harm to Rainwater from enjoining them.

72. The public interest is served by enforcing the terms of the EA and RCA.

73. Mercer is entitled to injunctive relief to prevent further injury from Rainwater's breaches of the RCA. *Id.* ("[Mercer] shall be entitled to enforce its rights under this Agreement by injunctive relief in addition to all remedies available at law or in equity.")

## FOURTH CAUSE OF ACTION
### (Misappropriation of Trade Secrets)

74. Mercer's confidential information comprises one or more a trade secrets under Ga. Code Ann., § 10-1-761(4). For example, Mercer's confidential information includes "a list of actual or potential customers … which is not commonly known by or available to the public and which information … [d]erives economic value, actual or potential, from not being generally known ... and [i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Ga. Code Ann., § 10-1-761(4).

75. Mercer's Confidential Client Information, including its client lists, derives actual economic value from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use. In particular, the exclusive use of Mercer's

confidential information by Mercer provides value to Mercer by facilitating its financial advising business, while excluding its competitors' access and use.

76. Mercer makes reasonable efforts to maintain the secrecy of its Confidential Client Information. These efforts include, but are not limited to, password-protecting the computer systems on which the Mercer's confidential information is maintained. *See* Ex. B at 4 (§ 5 of RCA) ("Employee must maintain a password to all Company Issued Devices in Employee's possession and … may not disclose Employee's password(s) for Company Issued Devices to any individual or entity outside of Company."). The efforts further include, but are not limited to, requiring employees with access to Mercer's confidential information to agree to maintain the secrecy of such information. *See*, *e.g.*, *id*. at 3 (§ 3 of RCA) ("Non-Disclosure/Non-Use of Confidential Information").

77. Rainwater has contacted and solicited several of Mercer's clients after the termination of his employment with Mercer. Rainwater's solicitation of Mercer's clients constitutes a material breach of his RCA. *Id.* at 5-7 (§ 8 of RCA).

78. On information and belief, Rainwater improperly acquired Mercer's confidential information by, among other things, retaining a copy of the Mercer's confidential information contained in an electronic spreadsheet with the filename "Kevin Rainwater Clients-2023-06-13-17-01-15.xlsx" in violation of his contractual

18

obligations to maintain the secrecy of the information and to return it to Mercer upon termination.

79. Rainwater's response to Mercer's October 26, 2023 cease and desist letter, demonstrates that Rainwater has no plans to discontinue his use of Mercer's confidential information to solicit clients away from Mercer unless he is enjoined.

80. Rainwater's misappropriation of Mercer's confidential information has damaged and will continue to damage Mercer.

81. Rainwater's misappropriation of Mercer's confidential information has unjustly enriched and will continue to unjust enrich Rainwater.

82. Rainwater's misappropriation of Mercer's confidential information is willful and malicious. Rainwater was aware that Mercer maintains its Confidential Client Information as a trade secret and deliberately violated his contractual obligations to maintain its secrecy and to use it only for Mercer's benefit. On information and belief, Rainwater has and will continue to use Mercer's confidential information to continue to deliberately harm Mercer by soliciting away Mercer's customers, unless enjoined.

### FIFTH CAUSE OF ACTION
**(Breach of the Common Law Duty of Loyalty)**

83. As a Mercer Wealth Advisor, Rainwater owed certain fiduciary duties to Mercer including without limitation, the duty of loyalty.

19

84.     During his employment with Mercer, Rainwater took actions which were intended to lay the groundwork for subsequent solicitation of Mercer's clients, including, but not limited to, transferring electronic files including Mercer Client Confidential Information on the day Rainwater resigned for the purpose of using that information after his departure to solicit Mercer's clients.

85.     By engaging in the misconduct described herein, Rainwater breached his duty of loyalty to Mercer.

86.     Rainwater's breach of his duty of loyalty has caused financial injury to Mercer.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for relief as follows:

1.      Temporary and permanent injunctive relief against Rainwater;

2.      Damages;

3.      Attorneys' fees and costs; and

4.      Such other and further relief as the Court deems just and proper.

20

Dated: October 27, 2023                    Respectfully submitted,

                                           **McDERMOTT WILL & EMERY LLP**

                                           By:   _/s/  Shane Nichols_
                                                 A. Shane Nichols
                                                 1180 Peachtree Street, NE
                                                 Suite 3350
                                                 Atlanta, GA 30309
                                                 Tel:  (404) 260-8553
                                                 Fax:  (404) 393-5260

                                                 *Attorneys for Plaintiff*