**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

MERCER GLOBAL ADVISORS INC.,

Plaintiff,

v.

KEVIN LAMAR RAINWATER and
BLUECHIP WEALTH ADVISORS, LLC,

Defendants.

Civil Action No. 23-CV-04964-SEG

**AMENDED COMPLAINT**

Plaintiff Mercer Global Advisors Inc. ("Plaintiff" or "Mercer"), by and through its undersigned attorneys, as and for its Amended Complaint against Defendants Kevin Lamar Rainwater ("Rainwater") and BlueChip Wealth Advisors, LLC ("BlueChip") (together, "Defendants"), alleges and sets forth as follows:

## NATURE OF THE ACTION

1. Mercer provides financial planning, investment management, and other financial services to individuals and businesses across the United States. Rainwater joined Mercer as a Senior Wealth Advisor on November 1, 2021, pursuant to Mercer's acquisition of substantially all of the assets of Rainwater's prior employer, ACG Wealth, Inc. ("ACG"), including its client lists, client relationships, and all other rights and properties.

2. On October 29, 2021, Rainwater executed an Employment Agreement ("EA") (Ex. A) and a Confidentiality and Restrictive Covenant Agreement ("RCA")

1

(Ex. B) as a condition of becoming a Mercer employee.

3.      As detailed further below, Rainwater's EA and RCA prohibited him from copying or using Mercer's confidential client information for any purpose other than advancing Mercer's business interests, both during his employment and after termination. The EA and RCA explicitly prohibit Rainwater from soliciting the Mercer clients with whom he worked or about whom he obtained confidential information through his employment with Mercer.

4.      Rainwater violated the EA, the RCA, and his fiduciary duties to Mercer, prior to his departure from Mercer by accessing and downloading Mercer's trade secrets and confidential client information, including highly proprietary client lists. Rainwater then used Mercer's trade secrets and confidential client information to solicit Mercer's customers and compete with Mercer.

5.      On October 25, 2023 and October 26, 2023, Mercer learned that the financial accounts of several of Mercer's clients had been "delinked" from Mercer by an unknown third party. When an account is delinked, Mercer is no longer the registered investment advisor for that account and Mercer personnel can no longer manage the account for the associated client.

6.      Mercer's investigation determined that the delinkings were done *en masse*, because the affected accounts were delinked at virtually the same time. Mercer personnel determined that the delinkings were almost certainly, therefore, done by a

single person, with the help of their new employer, who obtained Mercer's clients' authorizations to remove Mercer as the clients' registered investment advisor, using a confidential list of Mercer's client names and account information.

7.      Mercer's investigation also determined that virtually every one of the accounts that delinked *en masse* were associated with a Mercer client that Defendant Rainwater serviced, and about whom Defendant Rainwater gained confidential information, while he was a Mercer employee.

8.      Rainwater joined BlueChip on September 25, 2023, just one business day after leaving Mercer. The following day, Rainwater provided Mercer's trade secrets and confidential information to BlueChip. According to Rainwater, BlueChip subsequently stored Mercer's trade secrets and customer information in BlueChip's customer relationship management (CRM) system, thereby incorporating Mercer's client list and information into its database for use in competing against Mercer for those clients' business.

9.      On December 26, 2024, third-party electronic forensics company, FTI Consulting ("FTI") collected Rainwater's personal devices and uncovered more than 26,000 documents relating to this action.  Many of the documents recovered from Rainwater's devices include Mercer's trade secrets and confidential information.

10.      Defendants' unlawful conduct has caused significant and irreparable harm to Mercer and, if not enjoined, will cause serious additional significant and

3

irreparable harm.

11.     Mercer seeks injunctive and monetary relief against Rainwater for breach of contract, trade-secret misappropriation under the Georgia Trade Secrets Act of 1990, O.C.G.A. §10-1-760 *et seq.*, and breach of Rainwater's duty of loyalty.

12.     Mercer seeks injunctive and monetary relief against BlueChip for trade-secret misappropriation under O.C.G.A. §10-1-760 *et seq.* and for tortious interference with contract.

## PARTIES

13.     Plaintiff Mercer Global Advisors Inc. is a Delaware corporation with its principal place of business in Denver, Colorado, and offices across the country, including at 5901-B Peachtree Dunwoody Road, Suite 275, Atlanta, GA 30328.

14.     Defendant Kevin L. Rainwater is a natural person who is, and at all relevant times, has been a resident of Fulton County, Georgia, residing at 312 Delmont Dr. NE, Atlanta, Georgia 30305.

15.     Defendant BlueChip Wealth Advisors, LLC is a limited liability company organized and existing under the laws of Georgia, with its principal place of business at 12655 Birmingham Hwy, Suite 201, Milton, Georgia 30004.

## JURISDICTION AND VENUE

16.     This Court has personal jurisdiction over Rainwater because Rainwater resides and transacts business within the State of Georgia, and committed the wrongful

4

conduct alleged herein in the State of Georgia.

17.    This Court has personal jurisdiction over BlueChip because BlueChip is a limited liability company organized and existing under the laws of the State of Georgia.

18.    This Court also has jurisdiction over BlueChip because, upon information and belief, BlueChip directly or indirectly, offers for sale and/or sells its services throughout the United States, including in this judicial district.

19.    This Court has subject matter jurisdiction because Plaintiff and Defendants are diverse, and the amount in controversy, including the prevailing party's entitlement to recover its costs and attorneys' fees (Ex. B at 9 (§ 14 of RCA)) exceeds $75,000.

20.    Venue in this Court is proper under LR 3.1(B)(1)(a), because Rainwater resides in Fulton County, a county within this District.  Venue is proper in this Court because BlueChip is a Georgia limited liability company with its principal place of business in Fulton County, a county within this District. Venue is also proper under LR 3.1(B)(3), because Defendants' wrongful activity giving rise to the causes of action stated herein occurred within the Atlanta Division of this District.

21.    Further, Rainwater and Mercer have agreed that any dispute concerning Rainwater's RCA shall be brought only in a court of competent jurisdiction in Fulton County, Georgia.  Ex. B at 9 (§ 17 of RCA).

## FACTS

### Mercer's Business and M&A Strategy

22.    Mercer provides financial planning, investment, and other financial services to individuals and businesses across the United States. Founded in 1985, Mercer is one of the nation's most recognized names in investment management, managing approximately $52 billion in assets.

23.    Mercer invests significant amounts of money, time, and resources to developing and maintaining existing and prospective client relationships. Mercer's client-acquisition costs are high, and it dedicates significant resources to acquiring new clients in the hypercompetitive financial services industry, including by acquiring or merging with other wealth management firms. To safeguard this investment, Mercer requires all of its new employees, as a condition of employment, to sign certain agreements that clearly identify the proprietary and confidential nature of its client lists and information.

24.    Mercer entered the M&A market in 2016, and since that time has completed more than 80 acquisitions adding over $36 billion in assets under management ("AUM"). Mercer takes care when evaluating whether to acquire a particular firm. Its decision whether to acquire is based on each target firm's pro forma profitability, which is highly dependent on the target firm's AUM and revenue retained after closing. These figures, in turn, form the basis of each acquisition's carefully

6

negotiated purchase price.  As such, any post-closing reduction of revenue caused by the loss of one or more clients results in a much greater reduction in profit realized from the acquisition, and Mercer, as a result, takes a significant loss on the benefit of the carefully negotiated bargain.

25.    Mercer's strategy is intended to further its goal of building a single operating model that has scale, national brand awareness, and the ability to provide a consistent high-quality customer experience across offices and states.  Mercer is a fully institutionalized business and acquires nothing less than 100% of the outstanding ownership interests or operating assets of each of its targets.

**Mercer's Protectable Interests**

26.    Mercer maintains robust and confidential information on its existing and prospective clients, including client identities, biographical information, risk tolerance, investment preferences, financial plans, tax returns, estate plans, insurance needs, and all other investment and performance information, both for investments and assets held by Mercer and for those at other financial institutions.

27.    Mercer takes substantial steps to protect this high-value confidential information regarding its existing and prospective clients. These steps include entering into strict confidentiality agreements with its employees (described below).  In addition, Mercer maintains the database that stores its confidential client information protected with a password and login requirement so that only authorized Mercer employees can

access the information. Mercer limits each Wealth Advisor's access to client information to only that information relating to clients that the Wealth Advisor is responsible for servicing. The hard drives of all Mercer-issued laptops are encrypted, and each employee's Mercer-issued laptop and other electronic devices must be password protected before Mercer's confidential information can be stored on them.

28.    Further, Mercer trains and educates employees on protecting Mercer's confidential information to safeguard these valuable assets and comply with governing Securities and Exchange Commission privacy regulations. Mercer also instructs its employees about the importance of maintaining the confidentiality of Mercer proprietary information, including confidential client information, through its employee handbook and other documents outlining Mercer's policies and procedures.

29.    Mercer invests significant amounts of money in obtaining new clients and in protecting Mercer's confidential information pertaining to its existing and prospective clients.

**Rainwater's Employment History with Mercer**

30.    In 2021, Mercer acquired Rainwater's prior employer, ACG, along with ACG's client lists, client relationships, and all other rights and properties.

31.    In connection with its acquisition of ACG, Mercer hired Rainwater as a Senior Wealth Advisor, and Rainwater agreed to undertake certain contractual obligations to Mercer. As a condition of his employment, Rainwater signed the RCA

and EA, both of which are dated October 29, 2021. See Ex. A at 1, Ex. B at 1.

32.    Rainwater's EA and RCA both took effect on November 1, 2021. *Id.*

33.    Rainwater resigned his employment with Mercer on August 23, 2023. Following a thirty (30)-day transition period required by his RCA, Rainwater's employment with Mercer was terminated on September 21, 2023.

34.    On October 26, 2023, Mercer sent a letter to Rainwater reminding him of his continuing obligations under the RCA, including his nonsolicitation and confidentiality covenants contained therein. The letter also demanded that Rainwater cease and desist from soliciting Mercer clients and that he immediately return any of Mercer's confidential information that remained in his possession, custody, or control. Ex. C.

35.    On October 26, 2023, Rainwater responded by email to Mercer's counsel, stating:

> I have copied my attorney on this email in response to your letter. We respectfully disagree with and deny all allegations set forth in the letter attached to your email dated today and time stamped at 4:19 PM. There are no items to return and we will respond appropriately once we have had time to review the letter and [its] contents.

Ex. D (email from rainwater.kevin@yahoo.com).

**Selected Provisions of Mercer's Agreements with Rainwater**

36.    The terms of the RCA survive the termination of Rainwater's employment with Mercer. Ex. B at 10 (§ 20 of RCA).

9

37.    As part of his EA, Rainwater undertook a duty of loyalty to Mercer. Ex. A. at § 1.3 ("Employee shall loyally, conscientiously, and professionally do and perform all duties and responsibilities assigned by Employer and the Employee's supervisors.").

38.    Rainwater expressly acknowledged in his RCA that "the industry in which [Mercer] conducts business is highly competitive and that the Confidential Information constitutes valuable, special, and unique assets of [Mercer's], which [Mercer] uses in its business to obtain a competitive advantage over [Mercer's] competitors that do not know or use this information." Ex. B at 2 (§ 2 of RCA). Rainwater also acknowledged that "prior to [Rainwater's] employment with [Mercer], [Rainwater] did not have access to the Confidential Information, and would not otherwise have had such Confidential Information available to him/her through any other source." *Id*.

39.    Rainwater further agreed that within 24 hours of his resignation, he would return to Mercer all of its "written or electronic materials, data, information, records, and any other documents or property … in [Rainwater's] possession or control, whether located on or off [Mercer's] premises." Id. at 4 (§ 5 of RCA).

40.    In addition, Rainwater entered into a nonsolicitation covenant by which he agreed that, for 24 months following his termination, he would not "solicit or counsel … any Restricted Client to terminate any business relationship with [Mercer]

10

… [or] influence, induce, or encourage any Restricted Client to discontinue, reduce, or materially change its relationship or business with [Mercer]." Id. at 6 (§ 8(c)(i) of RCA).

41.    The Restricted Clients include those Mercer clients "with whom [Rainwater] worked, directly or indirectly… or about whom [Rainwater] received or had access to Confidential Information, during the twenty-four (24) month period preceding the termination of [his] employment." Id. Mercer Wealth Advisors are permitted to exclude their family members from the nonsolicitation covenant. Rainwater chose to identify four (4) family members for exclusion. Id. at 13. This carve out permitted Defendant Rainwater to solicit and work with those four family member-clients—but *only those four*—immediately upon his termination from Mercer. *Id.*

42.    Rainwater also agreed that "[i]n the event a dispute arises between the Parties relating in any way to this Agreement and legal action is instituted, by either Party, the prevailing Party shall be entitled to recover its reasonable costs and attorneys' fees (including paralegal fees) from the non-prevailing Party. As used herein, costs and attorneys' fees (including paralegal fees) include any costs and attorneys' fees in any appellate proceeding." *Id.* at 9 (§ 14 of RCA).

**Rainwater is Misappropriating Mercer's Trade Secrets and Wrongfully Soliciting Mercer's Clients**

43.    Rainwater has intentionally misappropriated and used Mercer's trade secrets, including its confidential client information.

44.    On information and belief, Rainwater has used Mercer's trade secrets and confidential client information to solicit Mercer clients to BlueChip and away from Mercer and to otherwise compete with Mercer.

45.    Mercer retains FTI Consulting, a third-party computer forensics analyst, to analyze the Mercer-issued laptops of departing Wealth Advisors. FTI Consulting's analysis of Rainwater's Mercer-issued laptops determined that just before and just after resigning, Rainwater repeatedly accessed a document including Mercer's confidential client information pertaining to clients whom Rainwater serviced as a Mercer employee. On the day of his resignation, Rainwater accessed and downloaded Mercer's confidential information, including but not limited to its highly proprietary client lists. On information and belief, Rainwater improperly retained a copy of at least one document including Mercer's confidential client information, after termination of his employment with Mercer.

46.    On or about October 11, 2023, Rainwater openly solicited business from Mercer's client Medical Association of Georgia ("MAG"), by making a sales presentation to the MAG personnel who are responsible for MAG's multiple employer retirement plan.

47.    On October 25, 2023 and October 26, 2023, Rainwater caused multiple Mercer clients to discontinue, reduce, or materially change their relationships with Mercer by delinking their accounts from Mercer's management. Every one of the

accounts delinked on those days was an account Rainwater serviced while he was Mercer employee.

48.    On December 26, 2024, Mercer arranged for FTI to collect Rainwater's personal electronic devices for forensic examination and recovery of documents relevant to this dispute.

49.    By February 1, 2025, FTI had identified and produced more than 26,000 documents meeting the search protocol agreed upon by Mercer and Rainwater.

50.    FTI recovered several documents from Rainwater's personal devices that included Mercer's trade secrets and confidential information. Rainwater without authorization, accessed numerous documents stored in Mercer's computer systems, containing Mercer's confidential information and trade secrets, and stored those documents on his personal computer, in violation of his obligations to Mercer.

51.    Rainwater also transmitted Mercer's trade secrets and confidential information to BlueChip without authority.  Rainwater transmitted, in an email to BlueChip, a list of Mercer clients, along with other of Mercer's confidential information. Rainwater instructed BlueChip personnel to begin contacting the clients on that confidential client list and to start converting them from Mercer clients to BlueChip clients.

52.    On information and belief, Rainwater has used and intends to continue using Mercer's confidential client information, including Mercer's client lists, in his

efforts to solicit clients away from Mercer.

**BlueChip Wealth Advisors Employs Rainwater, Tortiously Interfered with Mercer's Contracts with Rainwater, and Misappropriated Mercer's Trade Secrets**

53.    Mercer and BlueChip are competitors in the financial advisory industry.

54.    Rainwater terminated his employment with Mercer on September 21, 2023.  On September 25, 2023, Rainwater joined BlueChip and signed an Employee Confidentiality & Non-Compete Agreement with BlueChip.

55.    BlueChip's Employee Confidentiality & Non-Compete Agreement with Rainwater defines BlueChip's confidential information to include customer information, prospective customer information, financial and other personal information regarding customers, financial information, sales information, research, trading, portfolio and trading information, among other things.

56.    BlueChip's Employee Confidentiality & Non-Compete Agreement with Rainwater provides that none of BlueChip's confidential information shall be copied, reproduced, used, disclosed, or discussed in any manner unless necessary for Rainwater to carry out his job.  The agreement also prohibits Rainwater from retaining any copies, notes, or excerpts of BlueChip's confidential information upon termination.

57.    BlueChip treats its client lists, client account information, social security numbers, information about its clients' financial holdings, and contact information as

14

its confidential information and/or trade secrets.

58.    BlueChip's Employee Confidentiality & Non-Compete Agreement with Rainwater includes a non-solicitation provision that prohibits Rainwater from directly or indirectly, on his own behalf or on behalf of anyone else or any company, solicit in any matter or induce or attempt to induce any customer of BlueChip to divert all or any portion of their business from BlueChip or otherwise cease the relationship with BlueChip.

59.    Rainwater informed BlueChip that he had ongoing obligations to Mercer, pursuant to his employment agreement and restrictive covenant agreement with Mercer, but BlueChip never asked Rainwater to provide a copy of his agreements with Mercer and did not ask Rainwater for the details of the agreement.

60.    Within two days of Rainwater's joining BlueChip, Marcus Ashworth, owner and Managing Partner of BlueChip, expressed concern about the risk that Mercer would notice that a significant number of its clients' accounts and revenues were being transferred to BlueChip.

61.    On September 26, 2023, two business days after Rainwater's termination from Mercer, BlueChip accepted from Rainwater at least one document including Mercer's trade secrets and confidential information, and transferred the information into BlueChip's CRM system so it could use Mercer's confidential client to compete against Mercer for Mercer's clients' business.

62. BlueChip knew, had reason to know, and should have known that Mercer's trade secrets and confidential information in that document were acquired by improper means.

63. The client list Rainwater sent to BlueChip was created while Rainwater was still employed by Mercer. The client list included trade secrets and highly confidential information that Rainwater would not have had, but for his misappropriation of Mercer's trade secrets.

64. BlueChip used Mercer's trade secrets without Mercer's express or implied authorization.

65. BlueChip used Mercer's trade secrets for the improper purpose of competing with Mercer by acquiring Mercer's clients for itself.

66. BlueChip personnel contacted Mercer's clients from the client list to convert them from Mercer clients to BlueChip clients.

67. BlueChip personnel entered Mercer's trade secrets and other confidential information into BlueChip's CRM system.

68. BlueChip and Mercer are direct competitors. BlueChip provides wealth management and financial advisory services and targets the same clients.

69. Mercer has suffered financial losses because of BlueChip's misappropriation, including lost revenues and client relationships.

**FIRST CAUSE OF ACTION**
**(Breach of Contract - Solicitation)**
**(Against Rainwater)**

70.    Rainwater has breached each of the contractual provisions identified and described above.

71.    Rainwater breached his contractual duty not to solicit Mercer's customers.

72.    Rainwater's breaches have caused and will continue to cause both pecuniary and non-pecuniary damage to Mercer.

73.    Mercer is entitled to compensatory damages in partial redress of the harm caused by Rainwater's breaches.

74.    Mercer is further entitled to recover its costs and attorneys' (including paralegal fees) fees. *See* Ex. B at 9 (§ 14 of RCA).

75.    In addition to compensable harms, Rainwater's breaches also cause and have caused irreparable harm to Mercer.

76.    As Rainwater has specifically acknowledged, remedies at law for any breach of covenants in the RCA are inadequate. *Id.* at 8 (§ 12 of RCA) ("[M]oney damages would not be a sufficient remedy for any breach of this Agreement by [Rainwater].")

77.    The harm to Mercer from failure to enjoin Rainwater's continued breaches outweighs any harm to Rainwater from enjoining them.

17

78. The public interest is served by enforcing the terms of the EA and RCA.

79. Mercer is entitled to injunctive relief to prevent further injury from Rainwater's breaches of the RCA. *Id.* ("[Mercer] shall be entitled to enforce its rights under this Agreement by injunctive relief in addition to all remedies available at law or in equity.")

### SECOND CAUSE OF ACTION
**(Breach of Contract - Confidentiality)**
**(Against Rainwater)**

80. Rainwater has breached each of the contractual provisions identified and described above.

81. Rainwater breached his contractual duty not to copy or use Mercer's confidential client information other than for Mercer's benefit.

82. Rainwater breached his contractual duty to return Mercer's confidential client information to Mercer upon the termination of his employment.

83. Rainwater's breaches have caused and will continue to cause both pecuniary and non-pecuniary damage to Mercer.

84. Mercer is entitled to compensatory damages in partial redress of the harm caused by Rainwater's breaches.

85. Mercer is further entitled to recover its costs and attorneys' (including paralegal fees) fees. *See* Ex. B at 9 (§ 14 of RCA).

86. In addition to compensable harms, Rainwater's breaches also cause and

18

have caused irreparable harm to Mercer.

87.    As Rainwater has specifically acknowledged, remedies at law for any breach of covenants in the RCA are inadequate. *Id.* at 8 (§ 12 of RCA) ("[M]oney damages would not be a sufficient remedy for any breach of this Agreement by [Rainwater].")

88.    The harm to Mercer from failure to enjoin Rainwater's continued breaches outweighs any harm to Rainwater from enjoining them.

89.    The public interest is served by enforcing the terms of the EA and RCA.

90.    Mercer is entitled to injunctive relief to prevent further injury from Rainwater's breaches of the RCA. *Id.* ("[Mercer] shall be entitled to enforce its rights under this Agreement by injunctive relief in addition to all remedies available at law or in equity.")

### THIRD CAUSE OF ACTION
**(Breach of Contract – Duty of Loyalty)**
**(Against Rainwater)**

91.    Rainwater has breached each of the contractual provisions identified and described above.

92.    Rainwater breached his contractual duty of loyalty by acting for his own benefit and to the detriment of Mercer.

93.    Rainwater's breaches have caused and will continue to cause both pecuniary and non-pecuniary damage to Mercer.

19

94. Mercer is entitled to compensatory damages in partial redress of the harm caused by Rainwater's breaches.

95. Mercer is further entitled to recover its costs and attorneys' (including paralegal fees) fees. *See* Ex. B at 9 (§ 14 of RCA).

96. In addition to compensable harms, Rainwater's breaches also cause and have caused irreparable harm to Mercer.

97. As Rainwater has specifically acknowledged, remedies at law for any breach of covenants in the RCA are inadequate. *Id.* at 8 (§ 12 of RCA) ("[M]oney damages would not be a sufficient remedy for any breach of this Agreement by [Rainwater].")

98. The harm to Mercer from failure to enjoin Rainwater's continued breaches outweighs any harm to Rainwater from enjoining them.

99. The public interest is served by enforcing the terms of the EA and RCA.

100. Mercer is entitled to injunctive relief to prevent further injury from Rainwater's breaches of the RCA. *Id.* ("[Mercer] shall be entitled to enforce its rights under this Agreement by injunctive relief in addition to all remedies available at law or in equity.")

## FOURTH CAUSE OF ACTION
### (Misappropriation of Trade Secrets)
### (Against all Defendants)

101. Mercer's confidential information comprises one or more trade secrets

under Ga. Code Ann., § 10-1-761(4). For example, Mercer's confidential information includes "a list of actual or potential customers … which is not commonly known by or available to the public and which information … [d]erives economic value, actual or potential, from not being generally known ... and [i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Ga. Code Ann., § 10-1-761(4).

102.   Mercer's confidential client information, including its client lists, derives actual economic value from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value  from its disclosure or use.   In particular, the exclusive use  of Mercer's confidential information by Mercer provides value to Mercer by facilitating its financial advising business, while excluding its competitors' access and use.

103.   Mercer makes more than reasonable efforts to maintain the secrecy of its confidential client information. These efforts include, but are not limited to, password-protecting the computer systems on which the Mercer's confidential information is maintained. *See* Ex. B at 4 (§ 5 of RCA) ("Employee must maintain a password to all Company Issued Devices in Employee's possession and … may not disclose Employee's password(s) for Company Issued Devices to any individual or entity outside of Company."). The efforts further include, but are not limited to, requiring employees with access to Mercer's confidential information to agree to maintain the

21

secrecy of such information. *See*, *e.g.*, *id*. at 3 (§ 3 of RCA) ("Non- Disclosure/Non-Use of Confidential Information").

104.   Rainwater and BlueChip worked together in concerted action to misappropriate Mercer's trade secrets.

105.   Rainwater has contacted and solicited several of Mercer's clients after the termination of his employment with Mercer.  Rainwater's solicitation of Mercer's clients constitutes a material breach of his RCA.  *Id.* at 5-7 (§ 8 of RCA).

106.   On information and belief, Rainwater improperly acquired Mercer's trade secrets by, among other things, retaining a copy of the Mercer's confidential information contained in an electronic spreadsheet with the filename "Kevin Rainwater Clients-2023-06-13-17-01-15.xlsx" in violation of his contractual obligations to maintain the secrecy of the information and to return it to Mercer upon termination.

107.   Rainwater also improperly acquired Mercer's trade secrets by, among other things, improperly storing Mercer's confidential information on his personal electronic devices in violation of his contractual obligations.

108.   Rainwater also improperly acquired Mercer's trade secrets by, among other things, improperly retaining Mercer's confidential information on his personal electronic devices after terminating his employment, in violation of his contractual obligations, and thereby misappropriating Mercer's trade secrets.

109.   Rainwater's response to Mercer's October 26, 2023 cease and desist letter

was untruthful and demonstrates that, unless he is enjoined, Rainwater has no plans to discontinue using Mercer's confidential information to solicit clients away from Mercer. Indeed, Rainwater told Mercer's counsel that he possessed no Mercer confidential information, yet only a month earlier, he provided Mercer's trade secrets and confidential information to BlueChip for the purpose of competing with Mercer.

110. Rainwater improperly acquired Mercer's trade secrets, including Mercer's client list, by storing it on his personal electronic devices and by retaining Mercer's confidential client information after terminating his employment with Mercer.

111. Rainwater purposefully and improperly disclosed Mercer's trade secrets to BlueChip.

112. BlueChip acquired Mercer's trade secrets from Rainwater under circumstances in which BlueChip knew and/or had reason to know that Mercer's trade secrets were improperly acquired.

113. BlueChip used Mercer's trade secrets to solicit and acquire Mercer's clients.

114. Rainwater and BlueChip jointly used Mercer's trade secrets for their own benefit and to take clients and revenue from Mercer.

115. Rainwater and BlueChip worked together to input Mercer's trade secrets into BlueChip's CRM system. Defendants used Mercer's trade secrets to contact

Mercer's clients, cause them to delink their accounts from Mercer, and move their accounts to BlueChip.

116.   At all times material herein, Rainwater and BlueChip have been joint and several tortfeasors such that each is liable jointly and severally for the conduct of the other.

117.   Defendants' misappropriation of Mercer's trade secrets and confidential information has damaged and will continue to damage Mercer.

118.   Defendants' misappropriation of Mercer's trade secrets and confidential information has unjustly enriched and will continue to unjustly enrich Defendants.

119.   Rainwater's misappropriation of Mercer's confidential information is willful and malicious. Rainwater was aware that Mercer maintains its confidential client information as a trade secret and deliberately violated his contractual obligations to maintain its secrecy and to use it only for Mercer's benefit. On information and belief, Rainwater will continue to use Mercer's confidential information to continue to deliberately harm Mercer by soliciting away more of Mercer's customers, unless enjoined.

120.   BlueChip's misappropriation of Mercer's confidential information is willful and malicious. BlueChip was aware that Mercer maintains its confidential client information as a trade secret and yet deliberately used Mercers' confidential client information for its own benefit and to Mercer's detriment. On information and

24

belief, unless it is enjoined, BlueChip will continue to use Mercer's confidential client information to harm Mercer by soliciting away more of Mercer's clients.

## FIFTH CAUSE OF ACTION
### (Breach of the Common Law Duty of Loyalty)
### (Against Rainwater)

121.    As a Mercer Wealth Advisor, Rainwater owed certain fiduciary duties to Mercer including without limitation, the duty of loyalty.

122.    During his employment with Mercer, Rainwater took actions which were intended to lay the groundwork for subsequent solicitation of Mercer's clients, including, but not limited to, storing documents containing Mercer's confidential information and trade secrets on his personal electronic devices for the purpose of using that information after his departure to solicit Mercer's clients.

123.    By engaging in the misconduct described herein, Rainwater breached his duty of loyalty to Mercer.

124.    Rainwater's breach of his duty of loyalty has caused financial injury to Mercer.

## SIXTH CAUSE OF ACTION
### (Tortious Interference with Contract – Kevin Rainwater's EA and RCA)
### (Against BlueChip)

125.    BlueChip is not a party to the October 29, 2021 EA and RCA agreements between Mercer and Rainwater.

126.    BlueChip was aware of the EA and RCA agreements between Rainwater

25

and Mercer.

127. On information and belief, BlueChip is aware of industry standards prohibiting Rainwater from providing BlueChip with Mercer's confidential client information or using Mercer's confidential client information for BlueChip's benefit.

128. BlueChip knew or should have known that Rainwater was prohibited from providing BlueChip with Mercer's confidential client information or using Mercer's confidential client information for BlueChip's benefit .

129. The RCA includes a definition of Mercer's confidential information.

130. BlueChip and Mercer are competitors in the financial advisory market.

131. On or around September 26, 2023, BlueChip stored Mercer's confidential information in BlueChip's CRM system, designating Mercer's client information as BlueChip's prospective clients.

132. On September 27, 2023, just three business days after Rainwater departed Mercer, BlueChip's owner and Managing Partner acknowledged in writing that Mercer was going to notice the loss of revenue caused by BlueChip's transfer of Mercer's clients to BlueChip.

133. BlueChip knew or should have known that the client information it obtained solely from Rainwater—just two business days after Rainwater departed Mercer—and that BlueChip stored in its CRM system included Mercer's confidential information.

134. By inputting Mercer's confidential information into its CRM system BlueChip aided and enabled Rainwater to breach his contractual obligations to protect and to not disclose Mercer's confidential information.

135. Rainwater and BlueChip used Mercer's confidential information, improperly stored in BlueChip's CRM database, to solicit Mercer's clients and compete with Mercer.

136. Mercer suffered financial losses because of BlueChip's interference with Mercer's contracts with Rainwater conduct, including lost revenues and client relationships.

137. Mercer is entitled to compensatory damages in partial redress of the harm caused by BlueChip's tortious interference with Mercer's contracts with Rainwater.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff prays for relief as follows:

1. Permanent injunctive relief against Defendants;

2. A finding that Defendants, jointly and severally, purposefully and maliciously misappropriated Mercer's trade secrets;

3. A finding that Defendants, jointly and severally, are liable to Mercer for its resulting damages established in this action;

4. An appropriate award of compensatory damages for the harm Mercer incurred as a result of Defendants' wrongful conduct;

5.    Damages, jointly and severally, appropriate to compensate Mercer for Defendants' wrongful conduct;

6.    An order requiring Defendants to submit to, and to pay for, an equitable accounting to identify all sums improperly obtained from Mercer and to disgorge all monetary and other benefits improperly obtained to the detriment of Mercer.

7.    A finding that Defendants, jointly and severally, stand liable to Mercer for the imposition of punitive or exemplary damages, because Defendants' wrongful actions complained of herein were willful and malicious.

8.    Attorneys' fees and costs; and

9.    Such other and further relief as the Court deems just and proper.

Dated: March 6, 2025

Respectfully submitted,

By: /s/ *Shane Nichols*
A. Shane Nichols
(Georgia Bar No. 542654)
**MCDERMOTT WILL & EMERY LLP**
1180 Peachtree Street NE, Suite 3350
Atlanta, Georgia 30309
Tel:  404-260-8553
Fax:  404-393-5260
ShaneNichols@mwe.com

28

Jodi Benassi
*admitted pro hac vice*
**MCDERMOTT WILL & EMERY LLP**
415 Mission Street, Suite 5600
San Francisco, CA 94102
Tel: 628-218-3896
jbenassi@mwe.com

*Attorneys for Plaintiff*
*Mercer Global Advisors Inc.*

29