# EXHIBIT A

The following is the PDF of an official transcript.  Official transcripts may be filed in CM/ECF only by the official Court Reporter and will be restricted in CM/ECF for a period of 90 days. You may cite to a portion of the attached transcript by the docket entry number, referencing page and line number, only after the Court Reporter has filed the official transcript; however, you are prohibited from attaching a full or partial transcript to any document filed with the Court.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION


MERCER GLOBAL ADVISORS INC,          )
                                     )
                Plaintiff,           )
                     v.              )CIVIL ACTION
                                     )FILE NO. 1:23-CV-04964-SEG
                                     )
KEVIN LAMAR RAINWATER                )
BLUECHIP WEALTH ADVISORS, LLC,       )
                                     )   DISCOVERY CONFERENCE
                Defendants.          )
_____    )


BEFORE THE HONORABLE SARAH E. GERAGHTY
TRANSCRIPT OF PROCEEDINGS
SEPTEMBER 2, 2025.


APPEARANCES:

For the Plaintiff:          ALAN SHANE NICHOLS
                            JODI BENASSI
                            Attorney at Law

For the Defendant           JAMES DAVID HUGHES
Kevin Lamar Rainwater:      Attorney at Law

For the Defendant           CASEY BAKER
                            SCOTT W. MCMICKLE
BlueChip Wealth Advisors,   Attorney at law


        Proceedings recorded by mechanical stenography
          and computer-aided transcript produced by


                Melissa C Brock, RMR, RPR,
                  Official Court Reporter
                  2314 B U.S. Courthouse
                  75 Ted Turner Drive, SW
                  Atlanta, Georgia  30303
                     (404) 215-1478

2

TABLE OF CONTENTS


MISCELLANY

Proceedings, September 5, 2025 ...........   3
Certificate of Court Reporter.............  43

(Atlanta, Fulton County, Georgia, September 5, 2025, in open court.)

P R O C E E D I N G S

THE COURT:  This is case number 1:23-CV-4964.

Counsel, can you announce your appearances, beginning with the Plaintiff's side, please.

MR. NICHOLS:  Shane Nichols for Mercer Global Advisors, along with my colleague Jodi Benassi.

THE COURT:  All right.  Good afternoon to you.

MR. MCMICKLE:  Scott McMickle, Mike Johnson and Casey Baker all for BlueChip, Your Honor.

THE COURT:  All right.

MR. MCMICKLE:  Mr. Hughes is en route for Mr. Rainwater.

THE COURT:  And are we all right to begin without him?

MR. MCMICKLE:  I think collectively we think so.

MR. BAKER:  Yeah.  I don't think he has any interest in the first issue, Your Honor.

THE COURT:  Okay.  So we have two sets of discovery disputes here.  We have one dispute between the Plaintiff, Mercer Global Advisors, and Defendant, BlueChip Wealth Advisors.  Our second dispute is between Plaintiff, Mercer, and Defendant, Mr. Rainwater.  I was going to start with the first one.

4

So, we'll start with the disagreement involving BlueChip. I've read your discovery dispute statements. I appreciate you providing them. Let me just start with the question for BlueChip.

Given that Mercer's request for production was served in June, what sort of globally speaking accounts for the alleged trickle of documents produced between June and late August by -- and then the flood of documents produced in late August before the scheduling of this hearing?

Feel free to dispute the premise of my question but that's the first question that I have.

MR. MCMICKLE: Well, Your Honor, we originally started and produced documents the way that, frankly, we are used to producing documents, which was and it was about 3500 pages may be by 1500 -- 3500 or so pages of what I would call the old school way, which was, you know, the client collects the documents, we would make sure that they were responsive, we would send them to the other side. And for those documents, they were the ones that we felt like were responsive to their documents. And then the discovery responses, we actually refer to Bates numbers so that they can see what we're producing.

They -- that took -- well, the premise of your question, the discovery kind of started with the subpoena to BlueChip and then Marcus Ashworth is the owner of BlueChip and

then a lady named, I think it was Jessica Vickery.  So that sort of production started really before we were in the suit, I believe.  And then about the time we entered to the suit, we started producing the remainder of those -- there's 3,470 documents.

We -- that ended up sometime around the end of July.  And then we had a meet and confer on August 7th and they said, look, we need the metadata in this sort of case.  And so what that led to is we hired a entity called Firestorm to basically go in and pull all of the metadata from the documents that really we had already produced so that they could see the metadata and then we sent those to Everest, who is our eDiscovery provider that we hired.  And then we, I guess, served them to them via -- they were produced via relatively.  So that's kind of how we got here.

I think that -- Your Honor, I think the dispute is and what I saw in their letter was the suggestion that after our meet and confer in August that we didn't do anything until we figured out they were going to bring it to the Court's attention and that's just not true.

And what I thought would be the easiest thing to do is not ask you to take my word for it.  I brought the e-mails to Firestorm.  I brought my timesheets.  All of this stuff because it's -- that's a serious accusation in my mind that I just ignored everything.

I want you to see the e-mails to the Firestorm person that says, hey, here's what we are looking for.  This is what I need you to do and it will show you.  I have got those for you, if you would like to see them.

THE COURT:  Okay.  Thank you.  We may get to that in due course.

Let me ask to hear from Mercer, please, about what you all think has not been produced to day.

I have read -- as I said, I have read the statements, so I understand that there is some frustration on the Plaintiff's side.

MR. NICHOLS:  Sure.

THE COURT:  But I think it would be helpful for me to know bottom line what is the ask here.

MR. NICHOLS:  Understood, Your Honor.  And let me just -- as a preface to that, not going too far --

THE COURT:  Sure.

MR. NICHOLS:  -- I have handed up two binders to Your Honor.

THE COURT:  Okay.

MR. NICHOLS:  The heavier binder -- probably the other one --

THE COURT:  Okay.

MR. NICHOLS:  -- starts at Tab E.  And if you look behind Tab F, this is the competing, if you will, summaries of

the meet and confer that was held only August 7.  Okay.  And with that meet and confer, what I did was talk about all the different areas of discovery that we lacked still that were out in the letter that we submitted with our papers.  And if you look on there, you will see the first page is from Ms. Benassi to Mr. McMickle.  And it says what our view of the meet and confer was.

If you flip back two more pages, you will see Mr. McMickle's summary of it down at sort of the bottom of the page.  You see that email from Mr. McMickle to Ms. Benassi and you can see that for every one of these interrogatories and document requests, he says we're going to supplement. We're going to supplement.

And the other thing we asked them in that meet and confer on what date would you please supplement and they never gave us a date.

Now if you will move with me to Tab M.

MR. MCMICKLE:  Shane, do you have a copy for us?

MR. NICHOLS:  I am so sorry, yes.

MR. MCMICKLE:  Thank you.

MR. NICHOLS:  Excuse me, Your Honor.

If you look at Tab M, this is our summary of -- and this is just exemplary.  We had the biggest problem getting any kind of revenue data, any kind of financial data from BlueChip, and this is a summary of clients in the left-hand

8

column and missing data over in the right -- I'm sorry.  Do you not have Tab M?

THE COURT:  I have Tab N.  I do not have anything under M.

MR. NICHOLS:  There's not supposed to be an N.  I'm sorry.

Does it look like this?

THE COURT:  Yes.  That I have under Tab N.

MR. NICHOLS:  Okay.  Sorry about that.

THE COURT:  That's okay.

MR. NICHOLS:  But as you can see, there is still a ton of missing information for all these clients.  It's important, obviously, that we know what the revenues were that were generated by Mercer clients that went on to BlueChip.  And this is an internal document so -- but they know that they haven't produced all these documents.

Mr. McMickle said in his email we're going to supplement all this stuff.  Then they gave us 6000 documents.  And I just want to note one that -- Mr. McMickle is talking about pages of documents.  I'm talking about documents.  They gave us 6000 documents after giving us something like 700 documents before that.  Okay.  And despite that, we had -- we had -- they gave us the 6000 documents the day after this Court set a hearing for this motion.  They had never before then said we're going to produce these documents on whatever

day.  They just dumped them on us.

We had a team review these documents over the Labor Day weekend and so the document that's behind Tab N in your binder is the result of that.  We're still missing months and months of data for these clients of revenue.  It should be simple.  They can run a report.  They still haven't produced it.

THE COURT:  Is -- have you produced the document that we're talking about here to counsel for BlueChip or is this the first time they are seeing this?

MR. NICHOLS:  This is the first times they have seen it, Your Honor, but I wanted to also refer back to Mr. McMickle's letter to the Court where he says -- he points to an email that he sent us on the day that the Court -- I guess it was the day after -- it was two days ago when he sent an email to us saying we don't understand what's going on here.  What else do you need?

And, of course, we hadn't finished reviewing the documents yet.  So he said I don't know but -- we don't know what's in here yet.  We are still working on it.  But if you've got an idea of which of those things that you specified you were going to supplement, that you have actually supplemented, tell us that you did and then we'll know.

Well, they didn't do that.  They never told us what was in there or why it was supplemented and why it would

satisfy our request.  So they haven't seen this but they know full well what documents you haven't produced yet.

We've asked in various ways where are the documents that are for -- that represent the revenues for your clients. They haven't produced them over and over and over.  And we have been asking for this stuff since this Court forced them to produce documents the first time back in April of this year.

We sent a deficiency letter.  We had a meet and confer.  Nothing.  Still nothing.  And so we don't think BlueChip is ever going to produce documents in this case unless this Court makes it produce documents.  The only reason it produced documents the other day is because they knew they were coming to this hearing.

THE COURT:  All right.  I want to go over a couple of these requests that Mercer put in your discovery dispute letter of September 3rd.  I think a discussion on some of the interrogatory responses will help me get better acquainted with what is going on here.

So let's just start with Interrogatory No. 1.  That is a simply request asking for BlueChip to identify all current clients of BlueChip Wealth Advisors LLC, that are restricted clients.

And so I understand, counsel, that there has been a supplemental response made on August 15th.

About how many people are on the restricted clients list?

MR. NICHOLS:  May I refer to my co-counsel?

THE COURT:  Just ballpark.

MR. NICHOLS:  That are listed on the list roughly 50 to 60.  About 60, Your Honor.

THE COURT:  And so the reason that I ask about that is when I read the initial response to the interrogatory, it says -- it identifies one restricted client as I understand it, and then it goes on to say that the Defendant does not have access to or specific knowledge of the particulars of Rainwater's business except for receiving quarterly fees, assessment reports and, therefore, does not have knowledge sufficient to answer this interrogatory as to those clients.

And I just wanted to start there because I'm -- I think that I should be troubled by that response and troubled by when I compare it to the subsequent production of a list of a number of restricted clients, 60 something restricted clients.

So I'd like to hear from counsel for BlueChip about what is going on here.  If you all had a responsive list of 60-odd restricted clients why is your initial response -- why does your initial response not disclose that is so?

MR. MCMICKLE:  I think I can help Your Honor with that.

THE COURT:  Okay.

MR. MCMICKLE:  Your Honor, the -- first of all, the relationship with Rainwater and BlueChip is important. Rainwater is an independent contractor.  So -- and one of the things the Court is probably not aware of is that Rainwater in his document production had already before that time -- is that on the screen?  How do I make it on the screen?  Okay.  I can't see here but you can see it.

So, Your Honor, that's the list that Rainwater produced in the case of all of the what they call restricted clients, which are Mercer clients, that became BlueChip clients.  So, Your Honor, we, then, later -- I mean frankly they have already got it, number one.  But we don't keep his list.  We're -- he's represented by different counsel.  So we would have to go into his stuff.

So what we did is I reached out to Mr. Hughes and I said, hey, they want us to produce a list of clients.  And he said, hey, they already have it.  This is the list.  That's the only place we would get it.

So what we then did is produced this list which is here and we met and conferred on that I think on August 7th and I think we gave that to them on August 14th, so seven days later.

Again, can you see that?

THE COURT:  I can.

MR. MCMICKLE:  Okay.  Now, interestingly, Your Honor, they preface their whole argument in the case by all of these clients have been improperly solicited.  The only ones that have not signed declarations saying that they reached out to Mr. Rainwater first are the ones that are highlighted here.  Every other one has signed something under oath saying they reached out to Mr. Rainwater.

So I just want to -- I think it's fair -- this is not what we're trying to -- but they went to some efforts to try to, I think, color the analysis in a way.

So, we gave them this list on August 14th.  I told them, hey, if you have concerns about allegedly being prejudiced by getting this list the day before the deposition, we're happy to reschedule the deposition.  See it right there.  And I'll give you new dates for Mr. Ashworth's deposition.  If you want to -- if you need to extend your expert, that's fine but you've already had the data.

THE COURT:  By they already had -- are you telling me that they already had the client list that you --

MR. MCMICKLE:  Absolutely. Of course.  They've known that from the beginning of the case.

THE COURT:  Okay.  Why is -- then why is the response to Interrogatory No. 1, why doesn't that say here is the client list?  I'm missing something here.

MR. MCMICKLE:  Why doesn't it say here is the client

list?  We did not have the client list.  They knew who their restricted clients were, right?  We don't know -- we actually don't know who they are until we got Rainwater's list.  And I would say there was probably a little bit of time where we were getting up to speed and understanding sort of what had been produced and not produced and that sort of thing because there is tens of thousands of pages.

But initially, quite honestly, we were taking the position that Rainwater was represented by separate counsel, he's an independent contractor; we are not going to go into his stuff.  And so -- but if they have it from Rainwater, they have it from Rainwater.  But eventually we were like, you know what?  It's not worth it.  Let's just replicate what Rainwater has already given to them, because we can't give them anything different and we did that.

And, Your Honor, they took a 30(b)6 deposition of my client with those exhibit lists and asked them whatever questions they wanted to ask.  Was absolutely no prejudice here.

So I would say that maybe we didn't -- if we could go back in time knowing what I know now, would we just say see Rainwater's list?  I think so.  But at that point, I'm not sure really -- I don't -- that's the best I can offer.

MR. BAKER:  Your Honor, may I add just one thing?

Casey Baker on behalf of BlueChip.  I'm looking at

the original response.  Just to add on to something Mr. McMickle was saying, the reference was see the documents previously produced by Mr. Rainwater.  But the last line on page 7 of the first interrogatory by way of further response BlueChip states see documents produced here in AC 755 to 794.

Those were native files of all of Mr. Rainwater's retail clients.  It showed all their names.  They have got Bates number.  We sent them over.  The referenced clients that BlueChip do not have access to but are 401k clients and those are on different systems.  They're not stored on BlueChip's box system.  This is the name of the system.  So that's not something that BlueChip has ready access to is our understanding but we did produce those documents, see these documents.  These are native files of all clients, all of Mr. Rainwater's clients.

THE COURT:  The Plaintiff says that the documents to which you just referred were not responsive as they didn't identify restricted clients.

MR. MCMICKLE:  Those --

MR. BAKER:  It's all our client files.

MR. MCMICKLE:  What the client files are pretty much, Your Honor, is Mr. Rainwater will have one of these clients, Mr. X whoever that might be, and they would have a place in this box system where their client agreement would be and other types of those sort of agreements and we literally

just packaged all those up and gave them to them.  So we did not create a list at that time but we gave them the documents from which they could and referred them to the specific Bates number.

THE COURT:  All right.  Thank you.

Let's hear from the Plaintiff, please, about any other document requests or interrogatories that you want to talk about here.

MR. NICHOLS:  Can I just address some of the points that were just made?

THE COURT:  Sure, yeah.

MR. NICHOLS:  First of all, Mr. McMickle is right, they did take the position that they didn't have access to Mr. Rainwater's stuff.  It turned out that was not at all accurate.

I'm not saying Mr. McMickle was lying.  I'm saying his client was maybe never asked.  Maybe he didn't know.  I don't know.  They absolutely had access to his stuff.  They still didn't produce it.

They claim that the -- that everything was on his computer or segregated from the rest of the information they had access to.  It turned out not to be true.

We know that because we took Mr. Ashworth's deposition and he admitted that he and two other administrative people at the company had access to all of

Mr. Rainwater's information.  Not only that, the computer. They turned it over to FTI where we pulled all 26,000 documents he hadn't produced in the case.  That computer is the computer he uses at BlueChip and they didn't give us any of that information.

Now, on the 3rd, whenever they produced all that, not the 3rd -- on the 29th when they produced 7000 documents, they did produce all of his e-mails, all of Mr. Rainwater's e-mails that they had not produced or refused to admit they had access to this whole time, they produced some.  We don't know if they produced all of them.  They produced e-mails and they did it in a selective way.

I want to show you one email in particular.  I hope that your tab is K.

THE COURT:  I have got K.

MR. NICHOLS:  And it's an email from Mr. Rainwater to a person named █████████

THE COURT:  That is not what I have behind K.

MR. MCMICKLE:  I think it's L.

MR. NICHOLS:  Let me try L, ma'am.  Sorry.

Is that email to someone at the ████████████

THE COURT:  Yes.

MR. NICHOLS:  I'm sorry, Your Honor.

The first page is the email that BlueChip produced. You can see there is a Bates number on that page.  The

second -- starting at the second page is the entire email thread that shows that Mr. Rainwater was actively soliciting ▇▇▇▇▇▇▇▇▇▇▇ the whole time.  And it culminates in this email and this is the email that they produced.  They're not playing by the rules in this litigation, Your Honor, and I think we need to have a forensic examination of their system so we can tell whether they have actually produced Mr. Rainwater's e-mails or not.  The fact that they told us for months they didn't have access to it, I think is all we need to know about the way that they have been operating in this case.

THE COURT:  Okay.

MR. NICHOLS:  I'm sorry.  You asked me another question and that is I think what other information is still missing.  And if you look at the letter that was submitted, every -- and this is not an exhaustive list.  I think we called it exemplary but every one of these requests and interrogatories were included in what Mr. McMickle said he would produce after our August 7th meet and confer.  None of them have been satisfied and, obviously, any documents here today that they've show that we're wrong about that, they haven't identified Bates numbers to us even though we have asked.  They're still missing.

And so it isn't sufficient to await until a discovery hearing is set to provide this information.  It

isn't sufficient to dump 7000 documents on us that they don't even know what's in there.  And it's not at all playing by the rules when you claim to not have access to Mr. Rainwater's information until you're under oath in a deposition and it turned out oh, yeah, we do have access to all this.

And so we don't think there's any other way to get this stuff in a reliable way, except to force them to and have it done by a third party forensics.

That's all.

THE COURT:  Thank you.  Counsel, can you please address your colleague's assertion that there were -- I don't want to mischaracterize -- that there were potential misrepresentations about BlueChip's access to Mr. Rainwater's files.

MR. MCMICKLE:  I think the truth was that my understanding initially was that he was represented by separate counsel; he's an independent contractor.  I didn't have a right to go into his stuff.  I think there was a point where we realized they already have everything.  Why don't we just show them what we've got.  Let them have everything we have got and just literally give them everything they've asked for.

Your Honor, I think you might get a better flavor for this, if you will let me go through --

THE COURT:  Sure.

MR. MCMICKLE:  -- a response of what they said about the missing fee statements, because I think you were on to something, and then we just moved off of it but I want to walk you through that.

So, Your Honor, August -- so I want to show you kind of how this missing fee statement stuff went down.  Okay.  So August 6th, we're sitting in a deposition -- I think Shane was taking it -- and the issue came up about missing fee statements.  Maybe it was -- I addressed Jodie, so it must have been Jodie or maybe -- anyway I said, Jodie, if there's something missing, we will get that for you.  Please let us know what it is.  Okay.  That sounds fair.

Her response to that was the email is there in front of you.  And you'll notice that's August 6th at 2 p.m. I don't even know if the deposition had concluded.  Maybe it had just gotten over, so she -- so I asked her in the deposition, I said can you give me a list of what I'm missing or what we're missing?  She said, yes, here it is.

Now, Your Honor, I'm going to show you some attorney-client privileged documents.  I'd just like to be sure I have a limited waiver of the privilege.  I want to show exactly what I sent my client and what my client responded with and then what I gave them and then you can juxtapose that to what you just heard today.

So you will be able to see this is a email from

Jodie.  We go to the next page.  You can see the same day on August 6th, I sent it to Jessica Vickery, the person at BlueChip that would get these documents.  I said please collect the missing documents for -- other than the BlueChip profit and loss statements which we ended up giving by the way.

MR. NICHOLS:  Can I object, Your Honor?  I want to object to the limited waiver that he's requested.  I don't want to see these documents, if it's not going to be a waiver that allows us to get access to these documents.  So, if he's going to show these documents to defend what he did, then we have no idea what they did, but we know the results were terrible.  But if he's going to show these e-mails that show that he's done his diligence or whatever that's fine.  We want to see all of the e-mails that relate to what they didn't do in discovery or that tells his client don't worry, it's a independent contractor.  We don't have to produce documents in this case.  You know, if that's what they said, that's what we would like to see, because that's what the results look like happen behind the privileged log.

MR. MCMICKLE:  Your Honor, I don't know -- I don't know there to be any waiver beyond what's this document.  I mean, there's so many documents in this case, so much stuff and there's going to be an issue later where they have 300-plus documents that are privileged between Mr. Rainwater

and it's a mess.

THE COURT:  Do you really need to show me anymore privileged documents?  You are an officer of the court.  You can make representations to me about what you did on certain days.

MR. MCMICKLE:  Fair enough.  Your Honor, integrity is a lot.  And I'm willing to -- I mean I have got other stuff here for an in-camera review I would want you to see.  There's not a bit -- there's not any misleading stuff.

Let me continue.

So they asked for -- is it still on the screen?

So they sent that email and said, hey, here's what's missing.  Okay.  Here's what's missing, okay.  I will submit to you that I sent it to the client and said here's what's missing.

My client sent it back to me.  I have the document, if you would like to see it and it had a Excel spreadsheet that said, hey, here's all the things they asked for and some of them don't exist because there were no fees for that quarter and that sort of thing.

If you would -- I think this is more appropriate for an in-camera review.  But I would show you, Your Honor, that there is a spreadsheet where she lists all of the documents and if she could find them or not.

And then, in fact, on August 14th, I sent this email

to Jodi and Shane and the top part is what's important.  It says enclosed is the Dropbox link with the fee statements for some restricted clients that BlueChip was able to retain. There were no statements for some of the quarters as there were no fees for the quarters with fees deducted.

I can show you my client's email to me saying that, if you would like to see it.

So then we -- that Dropbox link had in it all of these documents, which are everything that they asked for in response, okay.  I can give you these things, if you would like.  These were -- we conferred on August -- well, I told them I would give it to them on August 6th.  They sent me a list on August 6th or 7th.  We gave them everything we had on August 14th.

We have never seen this list.  I asked them two days ago.  I said, hey, we thought we gave you what you needed. Can you let me know what we're missing?  Okay.  This is where it gets kind of interesting.

So they send me an email back.  You can see my email is dated September 4th.  It says you say we failed to produce a bunch of things.  Can you please let me know what we failed to produce?  Okay.

They then respond last night at 7:41, giving a list of 47 people and they say we have not produced any documents in response to that.  Okay.  So it takes a little while to

24

help you understand, but that's not true.

So, for example, they say we didn't produce the documents that they asked for for ███████████████.  Let's just use that as an example, okay.

Well, if you recall, they asked for ████████ ████████ in that email that was after I said in the deposition we would produce whatever they wanted.  Okay.  And we produced the ████████████████ Q4 2023 record that they were asking for.  And I have got to tell you, we are not trying to hide the rest of them.  There's a reason I said if you will just give me the list, I will get you these documents.  But the suggestion that we have shown up today and we're still sandbagging, that's just not right.

They gave us a list August 7th and we gave them everything that they asked for August 14th.  And they haven't said anything since that.  And I will state in my place now we'll produce the rest of the documents.  If they want to identify what's missing, we'll give it to them.  But one of the things I don't think that they will accept is that there are some quarters where the fee statements don't exist.

Now I think this is also important:  These fee statements -- you can see it's a long stretching -- these don't come from our system that they want to get into and do whatever they are going to do.

I have asked Jessica Vickery to go to the websites

and go in for particular clients and find the data and download it and put it into these documents and that's what she did.  So this is not some big conspiracy.  We asked them what was missing and we gave them what they asked for.  I'm not even sure we are required to go out and capture it and download it and give it to them but we did.

Your Honor, I also want to tell you they want to suggest that we are hiding and obfuscating discovery.  It's just not true.  One of the things they did was they asked us for all of -- in their letter, they say we haven't produced any of BlueChip's financials.

Well, that's just not true.  They ask for 2022 to present for BlueChip's financial statements.  Now BlueChip is owned by one guy.  It's a small business.  We produced his profit and loss.  We produced his balance sheet.  And they even insisted on getting his personal K-1, which I mentioned that I produced that on the way down here.  He said you are crazy.  Why would you do that?  I said because they won't stop until they get it, so I gave it to them.  They cross-examined him for an hour on his deductions in his income statement and on his K-1.  So we gave them all of this data.

And then say in that letter that we didn't produce it.  I just don't understand that.  But -- so we have given them every fee statement they asked for.  We've given them financial statements.  We've given them my client's personal

K-1 because they insisted on it to try to comply with their request. Now --

THE COURT: Counsel, are you willing to have any further discussion with counsel for the Plaintiff about what they say are the remaining items that not have been produced as represented in Tab M of the binder that they have given me here?

MR. MCMICKLE: Absolutely. If they had just sent that to me, I would have sent it to Jessica and said, hey, Jessica, it's going to screw up your weekend or maybe next Monday, just produce it.

THE COURT: Here's what's we are going to do. I understand that the statement has been made for a request for production of BlueChip's devices to a forensic neutral.

I am troubled by the course of discovery in this case but I think that that is very strong evidence and I don't think that we are there yet. So I simply don't think it would be an proportionate response at this the point.

What I'm going to do is take a break in the proceedings and I'm going to ask you all to have a discussion about the items that are on the list that counsel has provided today in court and to see what kind of progress you can make in terms of supplemental, an agreement to make supplemental productions or not. You can come back and tell me you can't agree. And if you can't agree, then perhaps we are headed to

a motion to compel.  But we're here, you all are here.  It sounds like progress maybe could be made.  Let's see if some progress can be made while we are all here.

Did you want to say something?

MR. MCMICKLE:  Just one more thing I realized.  I just need to get this out.  I don't like anybody suggesting that I have tried to do something that's underhanded.  I brought for your in-camera review the email to the I.T. provider the day of the meet and confer with everything that we asked them to do.  I was talking to the guy on Sunday to try to expedite the process.  It's all in here.

Then on August 11th, we sent him another email explaining exactly what we did and it just took a while.

I brought my fee bills for you to look at so that you can see everything that we were doing.  They all match up.  But I just -- I can't have -- I don't have much other than integrity and there is no -- so I don't -- they know that it takes a long time to get somebody to pull all the e-mails, to get them uploaded into your Ediscovery provider, and then they have to all be reviewed.  We reviewed 24,000 documents to try to get them everything that they would want.

My client spent $70,000 to try to get them what they insisted on.  And then to come in here and say that we didn't bother to do anything until the Court issued an order, they know that's not true.  So that's all I would say.

28

THE COURT:  Okay.  I hear what you're saying.  I know that discovery can be contentious, it can be difficult, and I also know that the judge really never knows the full -- the full background.  I know that because I have been on the other side of the bench and I know that to be true.

I think that the best thing for y'all to do now is just to focus on what you can do moving forward to get through discovery in an amicable and efficient way notwithstanding whatever issues may have arisen in the past.

MR. MCMICKLE:  Yes, Your Honor.  Thank you.

THE COURT:  So we're going to take a break while you all confer about the items on this list.

I have not forgotten about the dispute between Mr. Rainwater and Mercer.  We will get to that.  But for now, Ms. Holder will let me know when you are ready.  I'm here all day.  I have no other matters on the agenda.  Take your time.  We're in recess.

(Whereupon, a break was taken.)

THE COURT:  Counsel, I don't think five minutes had passed before I was summoned to return.

What's the report?

MR. MCMICKLE:  Your Honor, it sort of evolved into something that was less than productive.

May I approach?

THE COURT:  Sure.

MR. MCMICKLE:  So the accusation when you left was that I misrepresented to the Court what they had asked for and what we had produced, so I just want to walk you through it to make sure I was a hundred percent correct.

THE COURT:  I'm sorry.  What is it that we're doing now?

MR. MCMICKLE:  So, I agree -- I told them, I said if you'll identify any missing pieces that you have, I will produce them.  And all I got in response was an attack.  You lied to the Court.  You know you should have given -- you're -- you told me about integrity and all that and that was all a lie.  I'm embarrassed.  Those were almost the quotes.

THE COURT:  Okay.

MR. MCMICKLE:  So and --

THE COURT:  Counsel, we're -- I think we're done with this issue.  I have tried.  It sounds like the Plaintiff is simply going to have to file a motion to compel.  So that's where we are going to leave things.

Let me say this:  The question about a forensic neutral, that question is -- I have not ruled that.  I will say that.

My advice to you would be to take a look at the document that Plaintiff has produced here and to make a good-faith inquiry and ensure that your client has produced

everything that your client should produce under the rules.

I'm not sure that any further discussion is going to be productive.

MR. MCMICKLE:  I agree.  May I just do one thing for the record?

I will agree, Your Honor, to in the next, I don't know by the end of next week or maybe less, this lady is out of town.  I don't know her schedule.  I'll agree to produce everything they have asked for in Exhibit N by Friday of next week.

THE COURT:  Okay.  Yes.

MR. NICHOLS:  May I?

MR. MCMICKLE:  If there are more things I have to supplement.

MR. NICHOLS:  Here's all we are asking for, Your Honor.  It's super simple.  The problem is that he used ███ ███████ as an example.

We are missing revenues from Q3 of '24, Q1 of '25.  Even in his example, he's not right.  So I just want to make one point and that is we're not -- that document is a good checklist for them to use but our interrogatory, our document request, that is the standard that he has to meet.

And so when he says I gave them everything, that's not true.  Here's all they have to do.  All they have to do is give us the revenues since 2023 when Mr. Rainwater joined

BlueChip to the present for every client that used to be a Mercer client. It's super simple. You can say it in one sentence.

THE COURT: All right.

MR. MCMICKLE: We will agree to that.

THE COURT: Excuse me.

You are authorized to file a motion to compel, if you wish to do so.

MR. NICHOLS: Thank you, Your Honor.

THE COURT: All right.

Let's move on to our second issue for consideration, and that is the dispute between Mercer and Mr. Rainwater.

I have read the discovery dispute statement. I understand there is a dispute about certain documents that were inadvertently produced.

And like my first question for the parties is whether this issue has been narrowed to the single text from Mr. Rainwater to his counsel or whether there are other documents that are still in dispute here?

MR. HUGHES: From our perspective -- would you like to hear from him first? He's the movant.

THE COURT: Sir, if you could kindly announce your appearance for the record.

MR. HUGHES: My name is James Hughes. I'm the attorney for Kevin Rainwater.

So if I may, I just want to provide some context. So I know a lot of from what we just heard from the discovery dispute, I understand there's some back and forth.  I would say generally in discovery from -- it's very common that when I have access to request production for documents they already have, I don't usually encounter this issue with opposing counsel but it is common with Mercer's counsel, in particular, but that's not really the point of why we are here.

So turning back -- so back in December of 2024, Rainwater turned over essentially the laptop, phone, and USB storage device to FTI which is a -- while they claim to be a third party neutral, they really are Mercer's chosen, I guess, essentially some form of I.T. specialist.  And when they, you know, took Rainwater's laptop and also USB storage devices, they also had Rainwater's email and also his email from BlueChip as well.

So a lot of the 26,000 documents we received, it's essentially 26,000 pages, documents whatever it may be, a lot of the production itself was not necessarily relevant to the needs of this case.  It really wasn't all that helpful.

Upon further review, we learned that there is a whole list of probably in the range of about 280 documents that will be turning client privileged communications, essentially communications between Brent Bean and Kevin Rainwater.  Some of them asking about facts of the case,

seeking legal advice. I mean it's clearly attorney-client privilege. I just want to say on the record that we -- I think we are in agreement as to those documents not being admissible.

Rule 25 -- I'm sorry -- Federal Rule of Civil Procedure 26(b)(5) would require to Mercer to delete essentially all internal documents or internal documents that would be identified that would be attorney-client privilege and also trial preparation material, work product.

They've said multiple times they were going to refrain from accessing those documents. I'm really not sure what that means. They said they don't have access to those documents. I understand the rule itself says that when, you know, it's inadvertent production of privileged materials that the party that inadvertently received the privileged material essentially send the materials back to the party that, you know, essentially sent the materials. But here, you know, we have access to it. I think there's a issue of whether Mercer has deleted those communications.

Particularly, I think there is one communication that's troubling that's clearly attorney-client privilege and particularly with Model Rules of Professional Conduct both, you know, frankly Georgia and the ABA Rule 4.4(b) require essentially when a party has inadvertently received privileged material, they should alert the sender. In this case, that

would be Brent Bean.

So there's a communication that was used in Rainwater's deposition that would be a communication talking essentially about FTI production seeking legal advice. During the deposition, counsel for Mercer mentioned that it's a client product exception. I think it's -- in order to support a client product exception, there would have to be potentially a past showing that there would be criminal fraudulent conduct when they sought the legal advice and then also he was using -- that he had committed crimes subsequent to receiving the benefits of counsel's advice or there was potentially that he did the first. The second-step analysis would be the showing of attorney assistance obtained in furtherance of criminal fraudulent activity or something closely related to it.

There's not anything close that. There's no crime. There is no fraud. There is nothing that's in the realm of crime or fraud. Essentially just a blatant attempt to win.

When Mr. Nichols first saw that document for the deposition, whenever he first saw it, he should have immediately notified Brent Bean that he had received, you know, the attorney-client privileged communication. But instead, he used it in the deposition. They have also cited it here in the exhibits, so it's in the record.

Our request here is that all the documents that

we've identified, that we narrowed down the scope of it but in particularly this one is in dispute, but they would have to not only -- they wouldn't be able to access the document. They would have to delete all internal access for all internal copies.

They also include Exhibit 26 from Rainwater's deposition and we would also ask, that they would be able essentially to file a motion to compel to require them to delete those documents and also frankly this document should be stricken from the record as well.

Because I think it's important for context the reason why Mercer is trying to the file a motion to compel against BlueChip is that they realize they are not going to be able enforce to  the non-solicitation agreement.

There are 36 affidavits from former Mercer clients. Now they are seeking to prolong discovery, getting some sort of endless cycle against a smaller company.  And trying to find some form of smoking mirrors here.  And, frankly, I think this example in particular indicates a -- this is a attorney-client privileged communication.

You know, counsel for Mercer legally should have notified Brent Bean, which he didn't.  Instead they relied on what is a borderline frankly frivolous argument that it's a client fraud exception.  It's not supported by case law.

And, frankly, I know that they're going to argue

that it's somehow waived, but I think that kind of miss the point as well because the Model required Mercer's clients to immediately notify, you know, essentially as soon as the day after, they have to immediately notify Brent Bean of communication, which they didn't do.

It's my understanding there is, you know, a privilege objection on the record on its first use and I think it's pretty clear they are trying to somehow rely on, you know, smokes and mirrors in some form, but what inevitably going to be an exploitation argument but in reality that doesn't exist here.

They also -- this is frankly an attorney-client privileged communication that should have been -- it should have notified Brent Bean also that they need access to these documents.

THE COURT:  The Plaintiff says that Mr. Rainwater delayed past the ten-day window in the -- I think it's the -- I can't remember the ESI protocol for the other agreement that governs the forensic neutral.

What's Mr. Rainwater's response?

MR. HUGHES:  Yes.  So I would point out also in the FTI protocols, there is supposed to be a neutral third party. And, you know, one of the main things here is that, you know, they were not supposed to essentially treat, you know, produce any sort of, you know, privileged communication between

Rainwater and Brent Bean.

And the way -- I mean for context, the way this was produced, 26,000 pages of just frankly much random nonsense, password protected, you have to have access to it.  You have to sort through and sort of open each file and there is also -- it's not fairly -- it's fairly unduly burdensome for our client the way it was produced.  And regardless of that, you know, there's nothing in the FTI document production that would constitute a waiver of the attorney-client privilege.

This clearly is -- and then, you know, there is no crime fraud exception.  In the Model Rules under 4.4(b) would require Mercer's counsel to immediately notify Brent Bean, legal counsel for Rainwater, of the inadvertent disclosure.  Instead that's not what they did.  They tried to use it, you know, with the general smokes-and-mirror strategy employed here and use it in the deposition that -- I'm not sure -- it's our position there's no waiver of the attorney client privilege.  There is nothing in the FTI production that would -- where Rainwater agreed to that.

And I mean I think it's fairly concerning the way in which FTI has handled document production in this case.  You know, we have identified over 280 documents.  I think we narrowed down exactly the crux of what we would be disputing.  But really at issue here is this Exhibit 26 from Rainwater's deposition that wouldn't have been used in the first place.

THE COURT: All right. I suspect that you are going to have to a file a motion for protective order. We will hear from counsel for Mercer, but I suspect we're going to end up in the same place as we did with the first dispute.

Anything else that you would like to say before we hear from Mercer?

MR. HUGHES: I would like an opportunity to rebut --

THE COURT: Sure.

MR. HUGHES: -- to what they say, yeah, but certainly that's all I have for right now.

THE COURT: All right. Thank you.

Counsel, why is this one of the rare circumstances in which the crime of fraud exception should apply?

MR. NICHOLS: Well, as you know, Your Honor, the crime fraud exception requires an ongoing fraud. We are alleging and I think it's supported by the testimony from Mr. Rainwater, that this is an ongoing fraud on the court and on Mercer.

And the reason I say that is sort of touching on the waiver element as well. I presented the exhibit in the deposition.

Mr. Bean, his prior counsel, saw the document, had a chance to look at it. I let him review it and then I started asking questions.

He objected and said, wait, this looks like a

privileged document.

And I said, well, we're asserting the crime fraud exception to the privilege and explained my basis for it.

He said I object but okay and let me ask questions about the document. I think that's a clear waiver. We can forget about, you know, whether the search protocol falls back. I think they didn't satisfy that either. But it's a clear waiver of the privilege.

In this document he says I deleted text messages with clients. That's exactly what we were looking for in this document request to Mr. Rainwater.

So he tells his lawyer the day before he turns over his computer to FTI that, yeah, I went through and I cleared out my -- I believe he used the words computer and cell phone, cleared out text that have sensitive information. Then he deleted that text.

So that text was recovered not only just because it was on his phone. It was recovered after being deleted from his phone. I think it's a clear indication of what he was trying to do and what he did.

And let me just give you some flavor for that. You may remember you probably don't remember but way back when this case started, we filed a motion for preliminary injunction.

THE COURT: Oh, I remember.

MR. NICHOLS:  And you granted it.

Mr. Rainwater testified in that same hearing about a pitch that he had made to one of Mercer's biggest clients, ▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  That was a critical part of this case and it was specified in our complaint that that was one of the solicitations that we knew about that Mr. Rainwater had taken in.  He had that -- he made that presentation on October 11th.

We filed the complaint on October 27th, 16 days later.  There were 41 text messages back and forth between him and personnel at ▮▮▮ about setting up that meeting.  Okay.  All of them have been deleted.  They didn't show up and he didn't produce them obviously.

But even when FTI went through and pulled all the documents, it wasn't there either.  He had deleted them around, I assume, the time that we got the complaint.  They have disappeared from his phone.  They haven't produced them.

So these are -- we got it from ▮▮▮ ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮, in response to our deposition -- I'm sorry.  In response to our document subpoena, produced all of his texts with Mr. Rainwater over that period.  And so we know Mr. Rainwater was actively trying to solicit them and we know it from the documents that ▮▮▮▮▮▮▮▮▮▮▮▮▮ produced and nothing in Mr. Rainwater's possession.

And so when we found this text that said, hey

lawyer, I deleted client e-mails from my phone, we knew exactly what he meant by that.

So I put that in front of him and asked him about it and he admitted that he had deleted client texts with sensitive information.  And so, you know, I don't think that -- we don't have a problem with responding to a motion for protective order obviously but I don't think there's any realistic claim that this isn't an ongoing fraud on the court, an ongoing fraud on Mercer and that it's been waived in any event.

THE COURT:  Okay.  All right.  Is there anything else that you might like to say?

And I'll just tell you that this is not an issue I'm going to resolve on the record today.  I am going to need briefing on the issue with case law.  And if you choose to file a motion for protective order, I'd ask you to tell me your position about whether you want me to do an in-camera review of this document or not.

MR. HUGHES:  Sure.

I would -- we're open to an in-camera review of any document that has already been produced.  I would note here that I -- from conversations, really what we're asking for is not necessarily a protective order, because it's not as much as though we are like withholding some sort of document.

Our main issue is that this document shouldn't have

been produced in the first place and that essentially counsel for Mercer should have notified Brent Bean of the inadvertent document production.  They are now trying to disprove a negative that he deleted text that we do know exist but we know, you know, you sent them.

But it's my understanding also that all these, you know, communications with Jeremy Bonfini with MAG have been produced and I think that issue has been thoroughly discussed. I anticipate the Court will hear more about that in the near future.

But I will say that I think this is really the crux of -- essentially the dispute is that this document never should have been produced in the first place.  You know, this is clearly attorney-client privileged communication.  There's no crime of fraud on the court.  You know, there's essentially no crime has been committed; no fraud has been committed.

You know, I think we would certainly appreciate the opportunity to essentially file a briefing.  I will note that we wish to move for a protective order.  We are asking Mercer to delete the internal copies of that document and also that document should be stricken from the record.

THE COURT:  Okay.  Sure.  I'll just clarify you can file whatever motion that you would like to file seeking whatever relief you may wish to seek with respect to the document.  You don't have to file a motion to compel, if

that's not what you want to do.  That's fine.

All right.  Anything else that we should discuss before we adjourn?

MR. NICHOLS:  Not for Mercer.

THE COURT:  I regret that we were not able to make more progress but thank you for your time.

We're adjourned.

(The proceedings concluded.)

REPORTERS CERTIFICATE

I, Melissa Brock, Official Court Reporter for the United States District Court for the Northern District of Georgia, with offices at Atlanta, do hereby certify:

That I reported on the Stenograph machine the proceedings held in open court on; that said proceedings in connection with the hearing were reduced to typewritten form by me; and that the foregoing transcript is a true and accurate record of the proceedings.

This the 26th day of September, 2025.

_____
/s/ Melissa C.Brock RPR, RMR,
    Official Court Reporter

MR. BAKER: [3]  3/18 14/24 15/20
MR. HUGHES: [6]  31/20 31/24 36/21 38/7 38/9 41/19
MR. MCMICKLE: [28]  3/10 3/13 3/17 4/12 7/18 7/20 11/24 12/2 13/1 13/20 13/25 15/19 15/21 17/19 19/15 20/1 21/21 22/6 26/8 27/5 28/10 28/22 29/1 29/7 29/15 30/4 30/13 31/5
MR. NICHOLS: [27]  3/7 6/12 6/15 6/18 6/21 6/24 7/19 7/21 8/5 8/9 8/11 9/11 11/3 11/5 16/9 16/12 17/16 17/20 17/23 18/13 21/7 30/12 30/15 31/9 38/14 40/1 43/4
THE COURT: [53]

**$**

**$70,000 [1]**  27/22

**'**

**'24 [1]**  30/18
**'25 [1]**  30/18

**/**

**/s [1]**  43/24

**1**

**11th [2]**  27/12 40/8
**1478 [1]**  1/24
**14th [5]**  12/22 13/11 22/25 23/14 24/15
**1500 [1]**  4/15
**15th [1]**  10/25
**16 [1]**  40/9
**1:23-CV-04964-SEG [1]**  1/5
**1:23-CV-4964 [1]**  3/4

**2**

**2022 [1]**  25/12
**2023 [2]**  24/8 30/25
**2024 [1]**  32/9
**2025 [4]**  1/11 2/4 3/1 43/20
**215-1478 [1]**  1/24
**2314 [1]**  1/22
**24,000 [1]**  27/20
**25 [1]**  33/5
**26 [3]**  33/6 35/6 37/24
**26,000 [4]**  17/2 32/17 32/18 37/3
**26th [1]**  43/20
**27th [1]**  40/9
**280 [2]**  32/22 37/22
**29th [1]**  17/7

**3**

**3,470 [1]**  5/4
**30 [1]**  14/16
**300-plus [1]**  21/25
**30303 [1]**  1/23
**3500 [2]**  4/14 4/15
**36 [1]**  35/15
**3rd [3]**  10/17 17/6 17/7

**4**

**4.4 [2]**  33/23 37/11
**401k [1]**  15/9
**404 [1]**  1/24
**41 [1]**  40/10
**43 [1]**  2/4
**47 [1]**  23/24
**4964 [1]**  3/4

**4th [1]**  23/20

**5**

**50 [1]**  11/5

**6**

**60 [3]**  11/6 11/6 11/18
**60-odd [1]**  11/22
**6000 [3]**  8/18 8/21 8/23
**6th [5]**  20/7 20/14 21/2 23/12 23/13

**7**

**700 [1]**  8/21
**7000 [2]**  17/7 19/1
**75 [1]**  1/23
**755 [1]**  15/5
**794 [1]**  15/5
**7:41 [1]**  23/23
**7th [5]**  5/7 12/21 18/19 23/13 24/14

**9**

**90 [1]**  1/12

**A**

**ABA [1]**  33/23
**able [6]**  20/25 23/3 35/3 35/7 35/14 43/5
**about [39]**  4/14 5/3 6/7 7/2 8/9 8/20 8/20 9/9 11/1 11/6 11/7 11/20 13/12 16/6 16/8 18/10 18/21 19/13 20/1 20/8 22/4 26/4 26/21 28/12 28/13 29/11 29/20 31/14 32/22 32/25 34/4 39/5 39/6 40/2 40/7 40/11 41/3 41/17 42/9
**absolutely [4]**  13/20 14/18 16/18 26/8
**AC [1]**  15/5
**accept [1]**  24/19
**access [20]**  11/11 15/9 15/12 16/13 16/18 16/22 16/25 17/10 18/9 19/3 19/5 19/13 21/10 32/5 33/12 33/18 35/3 35/4 36/14 37/4
**accessing [1]**  33/11
**accounts [1]**  4/6
**accurate [2]**  16/15 43/19
**accusation [2]**  5/24 29/1
**acquainted [1]**  10/18
**ACTION [1]**  1/5
**actively [2]**  18/2 40/22
**activity [1]**  34/14
**actually [4]**  4/21 9/22 14/2 18/7
**add [2]**  14/24 15/1
**address [2]**  16/9 19/11
**addressed [1]**  20/9
**adjourn [1]**  43/3
**adjourned [1]**  43/7
**administrative [1]**  16/25
**admissible [1]**  33/4
**admit [1]**  17/9
**admitted [2]**  16/24 41/4
**advice [5]**  29/23 33/1 34/4 34/9 34/11
**ADVISORS [7]**  1/3 1/7 1/18 3/8 3/22 3/23 10/22
**affidavits [1]**  35/15
**after [9]**  1/15 5/17 8/21 8/23 9/15 18/19 24/6 36/4 39/18
**afternoon [1]**  3/9
**Again [1]**  12/24
**against [2]**  35/13 35/17
**agenda [1]**  28/16
**ago [2]**  9/15 23/16
**agree [7]**  26/25 26/25 29/7 30/4 30/6 30/8

**31/5**
**agreed [1]**  39/19
**agreement [5]**  15/24 26/23 33/3 35/14 36/18
**agreements [1]**  15/25
**aided [1]**  1/20
**ALAN [1]**  1/13
**alert [1]**  33/25
**all [74]**
**alleged [1]**  4/7
**allegedly [1]**  13/12
**alleging [1]**  38/16
**allows [1]**  21/10
**already [11]**  5/11 12/6 12/13 12/18 13/17 13/18 13/19 14/14 19/19 32/5 41/21
**also [19]**  9/12 24/21 25/7 28/3 32/14 32/15 32/15 33/9 34/9 34/23 35/6 35/7 35/9 36/12 36/14 36/21 37/5 42/6 42/20
**am [3]**  7/19 26/15 41/14
**amicable [1]**  28/8
**analysis [2]**  13/10 34/12
**announce [2]**  3/5 31/22
**another [2]**  18/13 27/12
**answer [1]**  11/14
**anticipate [1]**  42/9
**any [19]**  1/17 3/18 7/24 7/24 16/6 17/4 18/20 19/6 21/22 22/9 23/24 25/11 26/3 29/8 30/2 36/25 41/7 41/9 41/20
**anybody [1]**  27/6
**anymore [1]**  22/2
**anything [9]**  5/18 8/3 14/14 24/16 27/24 34/16 38/5 41/11 43/2
**anyway [1]**  20/10
**appearance [1]**  31/23
**appearances [2]**  1/12 3/5
**apply [1]**  38/13
**appreciate [2]**  4/3 42/17
**approach [1]**  28/24
**appropriate [1]**  22/21
**April [1]**  10/7
**are [59]**
**areas [1]**  7/3
**argue [1]**  35/25
**argument [3]**  13/2 35/23 36/10
**arisen [1]**  28/9
**around [2]**  5/6 40/16
**as [21]**  6/9 6/16 8/11 11/9 11/14 15/17 23/4 24/4 26/6 30/17 32/16 33/3 35/10 36/2 36/3 36/3 38/4 38/14 38/20 41/23 41/24
**Ashworth [1]**  4/25
**Ashworth's [2]**  13/15 16/23
**ask [10]**  5/22 6/7 6/14 11/7 14/18 25/12 26/20 35/7 39/4 41/16
**asked [24]**  7/14 10/3 14/17 16/17 18/13 18/23 19/21 20/16 22/11 22/18 23/9 23/15 24/3 24/5 24/15 24/25 25/3 25/4 25/9 25/24 27/10 29/2 30/9 41/3
**asking [8]**  10/6 10/21 24/9 30/15 32/25 38/24 41/22 42/19
**asserting [1]**  39/2
**assertion [1]**  19/11
**assessment [1]**  11/13
**assistance [1]**  34/13
**Association [1]**  40/4
**assume [1]**  40/16
**ATLANTA [4]**  1/2 1/23 3/1 43/14

## A

attached [1] 1/13
attaching [1] 1/16
attack [1] 29/9
attempt [1] 34/18
attention [1] 5/20
attorney [15] 1/14 1/16 1/18 20/20 31/25 33/1 33/8 33/21 34/13 34/22 35/20 36/12 37/9 37/17 42/14
attorney-client [9] 20/20 33/1 33/8 33/21 34/22 35/20 36/12 37/9 42/14
August [22] 4/8 4/9 5/7 5/18 7/1 10/25 12/21 12/22 13/11 18/19 20/5 20/7 20/14 21/2 22/25 23/11 23/12 23/13 23/14 24/14 24/15 27/12
authorized [1] 31/7
await [1] 18/24
aware [1] 12/5

## B

back [14] 7/8 9/12 10/7 14/21 22/16 23/19 26/24 32/3 32/9 32/9 33/16 39/7 39/22 40/10
background [1] 28/4
BAKER [3] 1/17 3/11 14/25
balance [1] 25/15
ballpark [1] 11/4
basically [1] 5/9
basis [1] 39/3
Bates [5] 4/21 15/8 16/3 17/25 18/22
be [44] 1/11 1/12 4/15 5/21 6/13 8/5 9/5 11/16 15/23 15/24 16/22 20/20 20/25 21/9 21/22 21/24 26/18 27/2 27/3 27/20 28/2 28/2 28/5 29/23 30/3 31/1 32/11 32/18 32/23 33/8 33/8 34/1 34/3 34/7 34/8 34/12 35/3 35/7 35/10 35/13 36/10 36/22 37/23 42/21
Bean [10] 32/24 34/1 34/21 35/22 36/4 36/14 37/1 37/12 38/22 42/2
became [1] 12/11
because [16] 5/24 10/13 11/15 14/6 14/14 16/23 20/2 21/19 22/19 25/18 26/1 28/4 35/11 36/2 39/17 41/23
been [23] 6/8 10/6 10/24 13/3 14/6 18/10 18/20 20/10 26/5 26/13 28/4 31/17 36/13 37/25 40/12 41/9 41/21 42/1 42/7 42/8 42/13 42/16 42/16
before [11] 1/10 4/9 5/2 8/22 8/24 12/6 13/13 28/20 38/5 39/12 43/3
begin [1] 3/15
beginning [2] 3/6 13/21
behalf [1] 14/25
behind [4] 6/25 9/3 17/18 21/20
being [3] 13/12 33/3 39/18
believe [2] 5/3 39/14
BENASSI [4] 1/14 3/8 7/6 7/10
bench [1] 28/5
benefits [1] 34/11
best [2] 14/23 28/6
better [2] 10/18 19/23
between [9] 3/21 3/23 4/7 21/25 28/13 31/12 32/24 36/25 40/10
beyond [1] 21/22
big [1] 25/3
biggest [2] 7/23 40/3
bills [1] 27/14
binder [3] 6/21 9/4 26/6
binders [1] 6/18
bit [2] 14/4 22/9

blatant [1] 34/18
BLUECHIP [30] 1/7 1/18 3/11 3/22 4/2 4/4 4/25 4/25 7/25 8/14 9/9 10/11 10/21 10/22 11/20 12/3 12/11 14/25 15/5 15/9 15/12 17/4 17/24 21/3 21/4 23/3 25/13 31/1 32/16 35/13
BlueChip's [5] 15/10 19/13 25/11 25/13 26/14
borderline [1] 35/23
both [1] 33/22
bother [1] 27/24
bottom [2] 6/14 7/9
box [2] 15/11 15/24
break [3] 26/19 28/11 28/18
Brent [9] 32/24 34/1 34/21 35/22 36/4 36/14 37/1 37/12 42/2
briefing [2] 41/15 42/18
bring [1] 5/19
Brock [2] 1/21 43/12
brought [4] 5/22 5/23 27/8 27/14
bunch [1] 23/21
burdensome [1] 37/6
business [2] 11/12 25/14

## C

C.Brock [1] 43/24
call [2] 4/15 12/10
called [3] 5/9 18/17 40/4
came [1] 20/8
camera [5] 22/8 22/22 27/8 41/17 41/20
can [35] 3/5 4/21 7/11 8/11 9/6 11/24 12/8 12/24 12/25 14/23 16/9 17/25 18/7 19/10 20/17 20/23 21/1 21/7 22/4 23/6 23/10 23/17 23/19 23/21 24/22 26/22 26/24 27/3 27/15 28/2 28/2 28/7 31/2 39/5 42/22
can't [6] 12/8 14/14 26/24 26/25 27/16 36/18
capture [1] 25/5
case [19] 3/4 5/8 10/11 12/10 13/2 13/21 17/3 18/11 21/18 21/23 26/16 32/20 32/25 33/25 35/24 37/21 39/23 40/5 41/15
CASEY [3] 1/17 3/11 14/25
cell [1] 39/14
CEO [1] 40/18
certain [2] 22/4 31/14
certainly [2] 38/10 42/17
Certificate [2] 2/4 43/10
certify [1] 43/14
chance [1] 38/23
checklist [1] 30/21
choose [1] 41/15
chosen [1] 32/12
circumstances [1] 38/12
cite [1] 1/13
cited [1] 34/23
CIVIL [2] 1/5 33/5
claim [4] 16/20 19/3 32/11 41/8
clarify [1] 42/22
clear [4] 36/8 39/5 39/8 39/19
cleared [2] 39/13 39/15
clearly [4] 33/1 33/21 37/10 42/14
client [38] 4/16 11/9 13/19 13/24 13/25 14/1 14/17 15/20 15/21 15/24 16/17 20/20 20/22 20/22 21/16 22/14 22/16 27/22 29/25 30/1 31/1 31/2 32/23 33/1 33/8 33/21 34/6 34/7 34/22 35/20 35/24 36/12 37/7 37/9 37/17 41/1 41/4 42/14
client's [2] 23/6 25/25

clients [31] 7/25 8/12 8/14 9/5 10/4 10/22 10/23 11/7 11/14 11/18 11/19 11/22 12/11 12/11 12/12 12/17 13/3 14/2 15/7 15/8 15/9 15/14 15/15 15/18 15/23 23/3 25/1 35/15 36/2 39/10 40/3
close [1] 34/16
closely [1] 34/14
CM [2] 1/11 1/12
CM/ECF [2] 1/11 1/12
co [1] 11/3
co-counsel [1] 11/3
colleague [1] 3/8
colleague's [1] 19/11
collect [1] 21/4
collectively [1] 3/17
collects [1] 4/16
color [1] 13/10
column [1] 8/1
come [3] 24/23 26/24 27/23
coming [1] 10/14
committed [3] 34/10 42/16 42/16
common [2] 32/4 32/7
communication [9] 33/20 34/2 34/3 34/22 35/20 36/5 36/13 36/25 42/14
communications [4] 32/23 32/24 33/19 42/7
company [2] 16/25 35/17
compare [1] 11/17
compel [6] 27/1 29/18 31/7 35/8 35/12 42/25
competing [1] 6/25
complaint [3] 40/6 40/9 40/16
comply [1] 26/1
computer [7] 1/20 16/21 17/1 17/3 17/4 39/13 39/14
computer-aided [1] 1/20
concerning [1] 37/20
concerns [1] 13/12
concluded [2] 20/15 43/8
conduct [2] 33/22 34/8
confer [10] 5/7 5/18 7/1 7/2 7/7 7/15 10/10 18/19 27/9 28/12
CONFERENCE [1] 1/7
conferred [2] 12/21 23/11
connection [1] 43/17
consideration [1] 31/11
conspiracy [1] 25/3
constitute [1] 37/9
contentious [1] 28/2
CONTENTS [1] 2/1
context [3] 32/1 35/11 37/2
continue [1] 22/10
contractor [4] 12/4 14/10 19/17 21/17
conversations [1] 41/22
copies [2] 35/5 42/20
copy [1] 7/18
correct [1] 29/4
could [6] 5/11 14/20 16/3 22/24 27/2 31/22
counsel [25] 3/5 9/9 10/24 11/3 11/20 12/14 14/9 19/10 19/17 26/3 26/4 26/21 28/19 29/16 31/18 32/7 32/7 34/5 35/21 37/12 37/13 38/3 38/12 38/22 42/1
counsel's [1] 34/11
County [1] 3/1
couple [1] 10/15
course [4] 6/6 9/18 13/20 26/15
court [26] 1/11 1/15 1/17 1/1 1/22 2/4 3/2 8/24 9/13 9/14 10/6 10/12 12/5 22/3 26/22 27/24 29/2 29/10 38/17 41/8 42/9 42/15 43/12

**C**

court... [3]  43/13 43/16 43/25
Court's [1]  5/19
Courthouse [1]  1/22
crazy [1]  25/18
create [1]  16/2
crime [8]  34/16 34/18 37/11 38/13 38/15 39/2
 42/15 42/16
crimes [1]  34/10
criminal [2]  34/8 34/14
critical [1]  40/5
cross [1]  25/19
cross-examined [1]  25/19
crux [2]  37/23 42/11
culminates [1]  18/3
current [1]  10/22
CV [2]  1/5 3/4
cycle [1]  35/17

**D**

data [7]  7/24 7/24 8/1 9/5 13/17 25/1 25/21
date [2]  7/15 7/16
dated [1]  23/20
dates [1]  13/15
DAVID [1]  1/15
day [15]  6/8 8/23 9/1 9/3 9/14 9/15 10/13
 13/13 21/1 27/9 28/16 36/3 36/17 39/12 43/20
days [6]  1/13 9/15 12/22 22/5 23/15 40/9
December [1]  32/9
declarations [1]  13/4
deducted [1]  23/5
deductions [1]  25/20
defend [1]  21/11
Defendant [5]  1/15 1/17 3/22 3/24 11/10
Defendants [1]  1/8
deficiency [1]  10/9
delayed [1]  36/17
delete [4]  33/6 35/4 35/9 42/20
deleted [9]  33/19 39/9 39/16 39/18 40/12
 40/15 41/1 41/4 42/4
deposition [19]  13/13 13/14 13/15 14/16
 16/24 19/4 20/7 20/15 20/16 24/7 34/3 34/5
 34/20 34/23 35/7 37/16 37/25 38/21 40/19
despite [1]  8/22
device [1]  32/11
devices [2]  26/14 32/14
did [23]  7/2 9/23 12/16 12/20 14/1 14/15
 15/13 16/1 16/13 17/8 17/12 21/11 21/12 22/4
 25/3 25/6 25/9 27/4 27/13 34/12 37/14 38/4
 39/20
didn't [19]  5/18 9/24 14/20 15/17 16/13 16/17
 16/19 17/4 18/9 19/17 21/15 24/2 25/22 27/23
 35/22 36/5 39/7 40/12 40/13
different [4]  7/3 12/14 14/15 15/10
difficult [1]  28/2
diligence [1]  21/14
disagreement [1]  4/1
disappeared [1]  40/17
disclose [1]  11/23
disclosure [1]  37/13
discovery [17]  1/7 3/20 4/2 4/20 4/24 7/3
 10/16 18/25 21/16 25/8 26/15 28/2 28/8 31/13
 32/2 32/4 35/16
discuss [1]  43/2
discussed [1]  42/8
discussion [4]  10/17 26/4 26/20 30/2

disprove [1]  42/3
dispute [15]  3/21 3/23 4/2 4/10 5/16 10/16
 28/13 31/12 31/13 31/14 31/19 32/3 35/2 38/4
 42/12
disputes [1]  3/21
disputing [1]  37/23
DISTRICT [4]  1/1 1/1 43/13 43/13
DIVISION [1]  1/2
do [33]  5/18 5/21 6/3 7/18 8/1 8/3 9/17 9/24
 12/7 15/9 19/5 21/15 22/2 24/23 24/24 25/18
 26/12 26/19 27/7 27/10 27/24 28/6 28/7 30/4
 30/24 30/24 31/8 36/5 39/20 41/17 42/4 43/1
 43/14
docket [1]  1/14
document [32]  1/17 7/12 8/15 9/3 9/8 12/6
 16/7 21/22 22/16 29/24 30/20 30/21 34/19
 35/3 35/9 37/8 37/21 38/22 39/1 39/5 39/9
 39/11 40/20 41/18 41/21 41/24 41/25 42/3
 42/12 42/20 42/21 42/25
documents [70]
does [4]  8/7 11/10 11/13 11/23
doesn't [3]  13/23 13/25 36/11
doing [2]  27/15 29/5
don't [41]  3/18 9/16 9/19 9/19 10/10 12/13
 14/2 14/3 14/23 16/18 17/10 19/1 19/6 19/11
 19/19 20/14 21/8 21/16 21/17 21/21 21/21
 22/19 24/19 24/20 24/23 25/23 26/16 26/17
 27/6 27/16 27/17 28/19 30/6 30/8 32/6 33/12
 39/22 41/5 41/6 41/7 42/25
done [3]  19/8 21/14 29/16
down [5]  7/9 20/6 25/17 35/1 37/23
download [2]  25/2 25/6
Drive [1]  1/23
Dropbox [2]  23/2 23/8
due [1]  6/6
dump [1]  19/1
dumped [1]  9/1
During [1]  34/4

**E**

e-mails [10]  5/22 6/1 17/8 17/9 17/11 18/8
 21/13 21/15 27/18 41/1
each [1]  37/5
easiest [1]  5/21
ECF [2]  1/11 1/12
eDiscovery [2]  5/13 27/19
efficient [1]  28/8
efforts [1]  13/9
either [2]  39/7 40/15
element [1]  38/20
else [4]  9/17 38/5 41/12 43/2
email [23]  7/10 8/17 9/14 9/16 17/13 17/16
 17/21 17/24 18/1 18/4 18/4 20/13 20/25 22/12
 22/25 23/6 23/19 23/19 24/6 27/8 27/12 32/15
 32/15
embarrassed [1]  29/12
employed [1]  37/15
en [1]  3/13
enclosed [1]  23/2
encounter [1]  32/6
end [3]  5/6 30/7 38/3
ended [2]  5/6 21/5
endless [1]  35/17
enforce [1]  35/14
enough [1]  22/6
ensure [1]  29/25
entered [1]  5/3

entire [1]  18/1
entity [1]  5/9
entry [1]  1/14
ESI [1]  36/18
essentially [17]  32/10 32/13 32/18 32/24
 33/7 33/16 33/17 33/24 34/4 34/18 35/8 36/3
 36/24 42/1 42/12 42/15 42/18
even [7]  18/22 19/2 20/15 25/5 25/16 30/19
 40/14
event [1]  41/10
eventually [1]  14/12
ever [1]  10/11
Everest [1]  5/12
every [6]  7/11 13/6 18/16 18/17 25/24 31/1
everything [14]  5/25 16/20 19/19 19/20 19/21
 23/9 23/13 24/15 27/9 27/15 27/21 30/1 30/9
 30/23
evidence [1]  26/16
evolved [1]  28/22
exactly [5]  20/22 27/13 37/23 39/10 41/2
examination [1]  18/6
examined [1]  25/19
example [5]  24/2 24/4 30/17 30/19 35/19
Excel [1]  22/17
except [2]  11/12 19/7
exception [7]  34/6 34/7 35/24 37/11 38/13
 38/15 39/3
Excuse [2]  7/21 31/6
exemplary [2]  7/23 18/17
exhaustive [1]  18/16
exhibit [5]  14/17 30/9 35/6 37/24 38/20
exhibits [1]  34/24
exist [4]  22/19 24/20 36/11 42/4
expedite [1]  27/11
expert [1]  13/16
explained [1]  39/3
explaining [1]  27/13
exploitation [1]  36/10
extend [1]  13/16

**F**

fact [2]  18/8 22/25
facts [1]  32/25
failed [2]  23/20 23/21
fair [3]  13/8 20/12 22/6
fairly [3]  37/6 37/6 37/20
faith [1]  29/25
falls [1]  39/6
far [1]  6/16
Federal [1]  33/5
fee [8]  20/2 20/6 20/8 23/2 24/20 24/21 25/24
 27/14
Feel [1]  4/10
fees [4]  11/12 22/19 23/5 23/5
felt [1]  4/19
figured [1]  5/19
file [12]  1/5 29/18 31/7 35/8 35/12 37/5 38/2
 41/16 42/18 42/23 42/23 42/25
filed [5]  1/11 1/15 1/17 39/23 40/9
files [5]  15/6 15/14 15/20 15/21 19/14
financial [3]  7/24 25/13 25/25
financials [1]  25/11
find [3]  22/24 25/1 35/18
fine [3]  13/16 21/14 43/1
finished [1]  9/18
Firestorm [3]  5/9 5/23 6/1
first [22]  3/19 3/25 4/11 7/5 9/10 9/11 10/7

**F**

first... [15] 12/2 13/5 15/4 16/12 17/24 31/15 31/21 34/12 34/19 34/20 36/7 37/25 38/4 42/1 42/13
five [1] 28/19
flavor [2] 19/23 39/21
flip [1] 7/8
flood [1] 4/8
focus [1] 28/7
following [1] 1/10
force [1] 19/7
forced [1] 10/6
foregoing [1] 43/18
forensic [4] 18/6 26/14 29/20 36/19
forensics [1] 19/8
forget [1] 39/6
forgotten [1] 28/13
form [4] 32/13 35/18 36/9 43/17
former [1] 35/15
forth [2] 32/3 40/10
forward [1] 28/7
found [1] 40/25
frankly [9] 4/13 12/12 33/23 35/9 35/18 35/23 35/25 36/12 37/3
fraud [13] 34/17 34/18 35/24 37/11 38/13 38/15 38/15 38/17 39/2 41/8 41/9 42/15 42/16
fraudulent [2] 34/8 34/14
free [1] 4/10
Friday [1] 30/9
frivolous [1] 35/23
front [2] 20/13 41/3
frustration [1] 6/10
FTI [9] 17/2 32/11 34/4 36/22 37/8 37/18 37/21 39/13 40/14
full [4] 1/16 10/2 28/3 28/4
Fulton [1] 3/1
further [4] 15/4 26/4 30/2 32/21
furtherance [1] 34/13
future [1] 42/10

**G**

gave [17] 7/16 8/18 8/21 8/23 12/22 13/11 16/1 16/2 20/23 23/13 23/16 24/14 24/14 25/4 25/19 25/21 30/23
████████████████
general [1] 37/15
generally [1] 32/4
generated [1] 8/14
GEORGIA [6] 1/1 1/23 3/1 33/23 40/4 43/14
GERAGHTY [1] 1/10
get [18] 6/5 10/18 12/19 19/6 19/23 20/11 21/3 21/10 24/11 24/23 25/19 27/6 27/18 27/19 27/21 27/22 28/7 28/14
gets [1] 23/18
getting [5] 7/23 13/13 14/5 25/16 35/16
give [12] 13/15 14/14 17/4 19/21 20/17 23/10 23/12 24/11 24/18 25/6 30/25 39/21
given [7] 4/5 14/14 25/23 25/24 25/25 26/6 29/10
giving [3] 8/21 21/5 23/23
GLOBAL [3] 1/3 3/7 3/22
globally [1] 4/6
go [11] 5/10 10/15 12/15 14/10 14/21 19/18 19/24 21/1 24/25 25/1 25/5
goes [1] 11/10
going [35] 3/24 5/19 6/16 7/12 7/13 8/17 8/25

9/16 9/22 10/11 10/19 11/21 14/10 20/19 21/9 21/11 21/13 21/24 24/24 26/10 26/12 26/19 26/20 28/11 29/18 29/19 30/2 33/10 35/13 35/25 36/10 38/1 38/3 41/14 41/14
good [3] 3/9 29/25 30/20
good-faith [1] 29/25
got [14] 5/15 6/3 9/21 12/13 14/3 15/7 17/15 19/20 19/21 22/7 24/9 29/9 40/16 40/18
gotten [1] 20/16
governs [1] 36/19
granted [1] 40/1
guess [3] 5/13 9/15 32/12
guy [2] 25/14 27/10

**H**

had [37] 5/7 5/11 7/23 8/22 8/23 8/24 9/2 10/9 11/21 12/6 13/17 13/18 13/19 14/5 16/18 16/22 16/25 17/9 17/10 20/15 20/15 22/17 23/8 23/13 26/8 28/19 29/2 29/3 32/15 34/10 34/21 38/22 40/3 40/7 40/7 40/15 41/4
hadn't [2] 9/18 17/3
hand [1] 7/25
handed [1] 6/18
handled [1] 37/21
happen [1] 21/20
happy [1] 13/14
has [20] 1/15 3/18 6/8 10/24 13/6 14/14 15/12 26/13 26/21 29/24 29/25 30/22 31/17 33/19 33/24 37/21 41/21 42/8 42/16 42/16
have [112]
haven't [9] 8/16 9/6 10/1 10/2 10/5 18/22 24/15 25/10 40/17
he [46]
he's [9] 12/14 14/10 19/17 21/8 21/10 21/13 21/14 30/19 31/21
headed [1] 26/25
hear [8] 6/7 11/20 16/6 28/1 31/21 38/2 38/6 42/9
heard [2] 20/24 32/2
hearing [6] 4/9 8/24 10/14 18/25 40/2 43/17
heavier [1] 6/21
held [2] 7/1 43/16
help [3] 10/18 11/24 24/1
helpful [2] 6/13 32/20
her [3] 20/13 20/16 30/8
here [40] 3/21 5/15 6/14 9/9 9/17 9/20 10/19 11/21 12/8 12/21 13/5 13/23 13/24 13/25 14/19 15/5 16/8 18/20 20/18 22/8 25/17 26/7 27/1 27/1 27/3 27/11 27/23 28/15 29/24 31/19 32/8 33/17 34/24 34/25 35/18 36/11 36/23 37/16 37/24 41/21
here's [8] 6/2 22/12 22/13 22/14 22/18 26/12 30/15 30/24
hereby [1] 43/14
hey [9] 6/2 12/17 12/18 13/12 22/12 22/18 23/16 26/9 40/25
hide [1] 24/10
hiding [1] 25/8
highlighted [1] 13/5
him [8] 3/16 25/20 27/12 31/21 38/23 40/10 41/3 41/3
hired [2] 5/9 5/13
his [28] 8/17 12/6 12/13 12/15 14/11 16/17 16/18 16/20 17/8 19/18 21/14 21/16 25/14 25/15 25/16 25/20 25/20 25/21 30/19 31/18 32/15 38/22 39/12 39/13 39/18 39/19 40/17 40/20

Holder [1] 28/15
honestly [1] 14/8
Honor [33] 3/11 3/19 4/12 5/16 6/15 6/19 7/21 9/12 11/6 11/24 12/2 12/9 12/12 13/2 14/16 14/24 15/22 17/23 18/5 19/23 20/5 20/19 21/7 21/21 22/6 22/22 25/7 28/10 28/22 30/6 30/16 31/9 38/14
HONORABLE [1] 1/10
hope [1] 17/13
hour [1] 25/20
how [4] 5/15 11/1 12/7 20/6
however [1] 1/16
HUGHES [4] 1/15 3/13 12/16 31/24
hundred [1] 29/4

**I**

I'd [3] 11/20 20/20 41/16
I'll [4] 13/15 30/8 41/13 42/22
I'm [27] 8/1 8/5 8/20 11/15 13/24 14/22 14/25 16/16 16/16 17/23 18/13 20/17 20/19 22/7 25/4 26/19 26/20 28/15 29/5 29/12 30/2 31/24 33/5 33/11 37/16 40/19 41/13
I've [1] 4/2
I.T [2] 27/8 32/13
idea [2] 9/21 21/12
identified [4] 18/22 33/8 35/1 37/22
identifies [1] 11/9
identify [4] 10/21 15/18 24/18 29/8
ignored [1] 5/25
immediately [4] 34/21 36/3 36/4 37/12
important [5] 8/13 12/3 23/1 24/21 35/11
improperly [1] 13/3
inadvertent [3] 33/14 37/13 42/2
inadvertently [3] 31/15 33/15 33/24
INC [1] 1/3
include [1] 35/6
included [1] 18/18
income [1] 25/20
independent [4] 12/4 14/10 19/17 21/17
indicates [1] 35/19
indication [1] 39/19
inevitably [1] 36/9
information [9] 8/12 16/21 17/1 17/5 18/14 18/25 19/4 39/15 41/5
initial [3] 11/8 11/22 11/23
initially [2] 14/8 19/16
injunction [1] 39/24
inquiry [1] 29/25
insisted [3] 25/16 26/1 27/23
instead [3] 34/23 35/22 37/14
integrity [3] 22/6 27/17 29/11
interest [1] 3/18
interesting [1] 23/18
interestingly [1] 13/1
internal [6] 8/15 33/7 33/7 35/4 35/4 42/20
interrogatories [3] 7/11 16/7 18/18
interrogatory [7] 10/18 10/20 11/8 11/14 13/23 15/4 30/21
involving [1] 4/1
is [131]
is also [1] 37/5
isn't [3] 18/24 19/1 41/8
issue [13] 3/19 20/8 21/24 29/17 31/11 31/17 32/6 33/18 37/24 41/13 41/15 41/25 42/8
issued [1] 27/24
issues [1] 28/9
it [114]

**I**

it's [42]  5/24 8/12 13/8 14/13 15/20 17/16 17/19 19/2 21/9 21/16 22/1 24/22 25/8 25/14 26/10 27/11 30/16 31/2 32/4 32/17 33/1 33/14 34/5 34/6 34/24 35/11 35/23 35/24 36/1 36/6 36/8 36/17 37/6 37/6 37/16 37/20 38/16 39/7 39/19 41/9 41/23 42/6
items [3]  26/5 26/21 28/12
its [1]  36/7
itself [2]  32/19 33/13

**J**

JAMES [2]  1/15 31/24
Jennifer [3]  24/3 24/5 24/8
Jeremy [2]  40/19 42/7
Jessica [5]  5/1 21/2 24/25 26/9 26/10
JODI [3]  1/14 3/8 23/1
Jodie [4]  20/9 20/10 20/10 21/1
Johnson [1]  3/10
joined [1]  30/25
judge [1]  28/3
July [1]  5/6
June [2]  4/6 4/7
just [50]
juxtapose [1]  20/23

**K**

K-1 [3]  25/16 25/21 26/1
keep [1]  12/13
KEVIN [4]  1/6 1/16 31/25 32/24
kind [8]  4/24 5/15 7/24 7/24 20/5 23/18 26/22 36/1
kindly [1]  31/22
knew [4]  10/13 14/1 40/6 41/1
know [68]
knowing [1]  14/21
knowledge [2]  11/11 11/13
known [1]  13/21
knows [1]  28/3

**L**

Labor [1]  9/2
lacked [1]  7/3
lady [2]  5/1 30/7
LAMAR [2]  1/6 1/16
laptop [2]  32/10 32/14
last [2]  15/3 23/23
late [2]  4/8 4/9
later [4]  12/12 12/23 21/24 40/10
law [5]  1/14 1/16 1/18 35/24 41/15
lawyer [2]  39/12 41/1
learned [1]  32/21
leave [1]  29/19
led [1]  5/9
left [2]  7/25 29/1
left-hand [1]  7/25
legal [4]  33/1 34/4 34/9 37/13
legally [1]  35/21
less [2]  28/23 30/7
let [15]  4/3 6/7 6/15 17/20 19/20 19/24 20/11 22/10 23/17 23/21 28/15 29/20 38/23 39/4 39/21
let's [6]  10/20 14/13 16/6 24/3 27/2 31/11
letter [8]  5/17 7/4 9/13 10/9 10/17 18/15 25/10 25/22
lie [1]  29/12

lied [1]  29/10
like [23]  4/19 6/4 8/7 8/21 11/20 14/12 20/20 21/19 21/19 22/17 23/7 23/11 27/2 27/6 29/17 31/16 31/20 38/5 38/7 38/25 41/12 41/24 42/23
limited [2]  20/21 21/8
line [3]  1/14 6/14 15/3
link [2]  23/2 23/8
list [28]  11/2 11/5 11/17 11/21 12/9 12/14 12/17 12/18 12/20 13/11 13/13 13/19 13/24 14/1 14/1 14/3 14/22 16/2 18/16 20/17 23/13 23/15 23/23 24/11 24/14 26/21 28/12 32/22
listed [1]  11/5
lists [2]  14/17 22/23
literally [2]  15/25 19/21
litigation [1]  18/5
little [2]  14/4 23/25
LLC [2]  1/7 10/22
log [1]  21/20
long [2]  24/22 27/18
look [10]  5/8 6/24 7/5 7/22 8/7 18/15 21/19 27/14 29/23 38/23
looking [3]  6/2 14/25 39/10
looks [1]  38/25
loss [2]  21/5 25/15
lot [4]  22/7 32/2 32/17 32/18
lying [1]  16/16

**M**

ma'am [1]  17/20
machine [1]  43/15
made [7]  10/25 16/10 26/13 27/2 27/3 40/3 40/7
████████████████████████████████████
mails [10]  5/22 6/1 17/8 17/9 17/11 18/8 21/13 21/15 27/18 41/1
main [2]  36/23 41/25
make [9]  4/17 12/7 22/4 26/22 26/23 29/4 29/24 30/19 43/5
makes [1]  10/12
many [2]  11/1 21/23
Marcus [1]  4/25
match [1]  27/15
material [3]  33/9 33/15 33/25
materials [3]  33/14 33/16 33/17
matters [1]  28/16
may [14]  1/11 1/13 4/15 6/5 11/3 14/24 28/9 28/24 30/4 30/12 32/1 32/18 39/22 42/24
maybe [9]  14/20 16/17 16/17 20/9 20/10 20/15 26/10 27/2 30/7
MCMICKLE [10]  1/17 3/10 7/6 7/10 8/17 8/19 15/2 16/12 16/16 18/18
McMickle's [2]  7/9 9/13
me [34]  4/3 6/7 6/13 6/15 7/17 7/21 10/18 13/19 17/20 18/13 19/24 20/17 22/2 22/4 22/10 22/16 23/6 23/12 23/17 23/19 23/21 24/11 26/6 26/9 26/24 28/15 29/11 29/20 31/6 39/4 39/21 41/16 41/17 43/18
mean [6]  12/12 21/23 22/7 33/1 37/2 37/20
means [1]  33/12
meant [1]  41/2
mechanical [1]  1/19
Medical [1]  40/4
meet [10]  5/7 5/18 7/1 7/2 7/7 7/14 10/9 18/19 27/9 30/22
meeting [1]  40/11

Melissa [3]  1/21 43/12 43/24
mentioned [2]  25/16 34/5
MERCER [24]  1/3 3/7 3/22 3/23 6/7 8/14 10/16 12/11 28/14 31/2 31/12 33/6 33/18 34/5 35/12 35/15 35/21 38/3 38/6 38/18 41/9 42/2 42/19 43/4
Mercer's [6]  4/5 32/7 32/12 36/2 37/12 40/3
mess [1]  22/1
messages [2]  39/9 40/10
met [1]  12/21
metadata [3]  5/8 5/10 5/12
might [3]  15/23 19/23 41/12
Mike [1]  3/10
mind [1]  5/24
minutes [1]  28/19
mirror [1]  37/15
mirrors [2]  35/18 36/9
MISCELLANY [1]  2/3
mischaracterize [1]  19/12
misleading [1]  22/9
misrepresentations [1]  19/13
misrepresented [1]  29/2
miss [1]  36/1
missing [21]  8/1 8/12 9/4 13/24 18/15 18/23 20/2 20/6 20/8 20/11 20/17 20/18 21/4 22/13 22/13 22/15 23/17 24/18 25/4 29/8 30/18
Model [3]  33/22 36/2 37/11
Monday [1]  26/11
months [3]  9/4 9/5 18/9
more [6]  7/8 22/21 27/5 30/13 42/9 43/6
motion [12]  8/24 27/1 29/18 31/7 35/8 35/12 38/2 39/23 41/6 41/16 42/23 42/25
movant [1]  31/21
move [3]  7/17 31/11 42/19
moved [1]  20/3
moving [1]  28/7
Mr. [48]
Mr. Ashworth's [2]  13/15 16/23
Mr. Bean [1]  38/22
████████████████████████████████████
Mr. Hughes [2]  3/13 12/16
Mr. McMickle [8]  7/6 7/10 8/17 8/19 15/2 16/12 16/16 18/18
Mr. McMickle's [2]  7/9 9/13
Mr. Nichols [1]  34/19
Mr. Rainwater [20]  3/14 3/24 13/5 13/7 15/3 15/22 17/16 18/2 21/25 28/14 30/25 31/12 31/18 36/16 38/17 39/11 40/2 40/7 40/21 40/22
Mr. Rainwater's [10]  15/6 15/15 16/14 17/1 17/8 18/8 19/3 19/13 36/20 40/24
Mr. X [1]  15/23
Ms [2]  7/10 30/16
Ms. [2]  7/6 28/15
Ms. Benassi [1]  7/6
Ms. Holder [1]  28/15
much [5]  15/22 21/23 27/16 37/3 41/23
multiple [1]  33/10
must [1]  20/9
my [25]  3/8 4/10 5/22 5/23 5/24 11/3 14/16 19/15 20/22 20/22 22/16 23/6 23/19 24/16 25/25 27/14 27/22 29/23 31/16 31/24 36/6 39/3 39/14 41/1 42/6

**N**

name [2]  15/11 31/24
named [2]  5/1 17/17

**N**

names [1] 15/7
narrowed [3] 31/17 35/1 37/23
native [2] 15/6 15/14
near [1] 42/9
necessarily [2] 32/19 41/23
need [10] 5/8 6/3 9/17 13/16 18/6 18/10 22/2
  27/6 36/14 41/14
needed [1] 23/16
needs [1] 32/20
negative [1] 42/4
neutral [5] 26/14 29/21 32/12 36/19 36/22
never [7] 7/15 8/24 9/24 16/17 23/15 28/3
  42/12
new [1] 13/15
next [5] 21/1 26/10 30/6 30/7 30/9
NICHOLS [3] 1/13 3/7 34/19
night [1] 23/23
no [17] 1/5 10/20 13/23 14/18 21/12 22/19
  23/4 23/5 27/17 28/16 34/16 34/17 37/10
  37/17 42/15 42/16 42/16
non [1] 35/14
non-solicitation [1] 35/14
None [1] 18/19
nonsense [1] 37/3
NORTHERN [2] 1/1 43/13
not [76]
note [3] 8/19 41/21 42/18
nothing [6] 10/10 10/10 34/17 37/8 37/18
  40/24
notice [1] 20/14
notified [4] 34/21 35/22 36/14 42/2
notify [3] 36/3 36/4 37/12
notwithstanding [1] 28/8
now [15] 7/17 13/1 14/21 17/6 20/19 24/16
  24/21 25/13 26/2 28/6 28/14 29/6 35/16 38/10
  42/3
number [8] 1/14 1/14 3/4 11/18 12/13 15/8
  16/4 17/25
numbers [2] 4/21 18/22

**O**

oath [2] 13/6 19/4
obfuscating [1] 25/8
object [3] 21/7 21/8 39/4
objected [1] 38/25
objection [1] 36/7
obtained [1] 34/13
obviously [4] 8/13 18/20 40/13 41/7
October [2] 40/8 40/9
odd [1] 11/22
off [1] 20/3
offer [1] 14/23
officer [1] 22/3
offices [1] 43/14
official [7] 1/10 1/10 1/11 1/15 1/22 43/12
  43/25
oh [2] 19/5 39/25
okay [30] 3/20 6/5 6/20 6/23 7/1 8/9 8/10
  8/22 12/1 12/7 13/1 13/22 18/12 20/6 20/12
  22/13 22/13 23/10 23/17 23/22 23/25 24/4
  24/7 28/1 29/14 30/11 39/4 40/11 41/11 42/22
old [1] 4/16
one [26] 3/21 3/25 6/22 7/11 8/19 11/9 12/4
  12/13 13/6 14/24 15/22 17/13 18/17 24/18
  25/9 25/14 27/5 30/4 30/20 31/2 33/20 35/2

ones [3] 4/19 13/3 13/5
ongoing [4] 38/15 38/17 41/8 41/9
only [9] 1/11 1/15 7/1 10/12 12/19 13/3 17/1
  35/3 39/17
open [4] 3/2 37/5 41/20 43/16
operating [1] 18/10
opportunity [2] 38/7 42/18
opposing [1] 32/6
order [7] 27/24 34/6 38/2 41/7 41/16 41/23
  42/19
original [1] 15/1
originally [1] 4/12
other [17] 4/18 6/22 7/14 10/13 13/6 15/25
  16/7 16/24 18/14 19/6 21/4 22/7 27/16 28/5
  28/16 31/18 36/18
our [22] 3/23 5/12 5/18 7/4 7/6 7/22 10/1
  15/12 15/20 18/19 24/23 30/21 30/21 31/11
  31/20 34/25 37/6 37/17 40/5 40/19 40/20
  41/25
out [14] 5/19 7/4 12/16 13/4 13/7 16/14 16/22
  19/5 25/5 27/6 30/7 36/21 39/14 39/15
over [13] 8/1 9/2 10/5 10/5 10/5 10/15 15/8
  17/2 20/16 32/10 37/22 39/12 40/21
owned [1] 25/14
owner [1] 4/25

**P**

p.m [1] 20/14
packaged [1] 16/1
page [8] 1/14 7/5 7/10 15/4 17/24 17/25 18/1
  21/1
pages [7] 4/15 4/15 7/8 8/20 14/7 32/18 37/3
papers [1] 7/4
part [2] 23/1 40/5
partial [1] 1/17
particular [4] 17/13 25/1 32/7 35/19
particularly [3] 33/20 33/22 35/2
particulars [1] 11/11
parties [1] 31/16
party [6] 19/8 32/12 33/15 33/16 33/24 36/22
passed [1] 28/20
password [1] 37/4
past [3] 28/9 34/8 36/17
PDF [1] 1/10
people [3] 11/1 16/25 23/24
percent [1] 29/4
perhaps [1] 26/25
period [2] 1/12 40/21
person [3] 6/2 17/17 21/2
personal [2] 25/16 25/25
personnel [1] 40/11
perspective [1] 31/20
phone [6] 32/10 39/14 39/18 39/19 40/17
  41/1
pieces [1] 29/8
pitch [1] 40/3
place [7] 12/19 15/24 24/16 37/25 38/4 42/1
  42/13
Plaintiff [10] 1/4 1/13 3/21 3/23 15/16 16/6
  26/4 29/17 29/24 36/16
Plaintiff's [2] 3/6 6/11
playing [2] 18/5 19/2
please [8] 3/6 6/7 7/15 16/6 19/10 20/11 21/3
  23/21
plus [1] 21/25
point [7] 14/22 19/18 26/18 30/20 32/8 36/2

36/21
points [2] 9/13 16/9
portion [1] 1/13
position [4] 14/9 16/13 37/17 41/17
possession [1] 40/24
potential [1] 19/12
potentially [2] 34/7 34/11
preface [2] 6/16 13/2
prejudice [1] 14/18
prejudiced [1] 13/13
preliminary [1] 39/23
premise [2] 4/10 4/23
preparation [1] 33/9
present [2] 25/13 31/1
presentation [1] 40/8
presented [1] 38/20
pretty [2] 15/21 36/8
previously [1] 15/3
prior [1] 38/22
privilege [9] 20/21 33/2 33/8 33/21 36/7 37/9
  37/18 39/3 39/8
privileged [14] 20/20 21/20 21/25 22/3 32/23
  33/14 33/15 33/24 34/22 35/20 36/13 36/25
  39/1 42/14
probably [5] 6/21 12/5 14/4 32/22 39/22
problem [3] 7/23 30/16 41/6
Procedure [1] 33/6
proceedings [8] 1/10 1/19 2/4 26/20 43/8
  43/16 43/16 43/19
process [1] 27/11
produce [22] 8/25 10/7 10/11 10/12 12/17
  15/13 16/19 17/8 18/19 21/17 23/20 23/22
  24/2 24/7 24/17 25/22 26/11 29/9 30/1 30/8
  36/24 40/13
produced [49]
producing [3] 4/14 4/22 5/4
product [3] 33/9 34/6 34/7
production [13] 4/5 5/2 11/17 12/6 26/14
  32/5 32/19 33/14 34/4 37/8 37/18 37/21 42/3
productions [1] 26/24
productive [2] 28/23 30/3
Professional [1] 33/22
profit [2] 21/5 25/15
progress [4] 26/22 27/2 27/3 43/6
prohibited [1] 1/16
prolong [1] 35/16
proportionate [1] 26/18
protected [1] 37/4
protective [5] 38/2 41/7 41/16 41/23 42/19
protocol [2] 36/18 39/6
protocols [1] 36/22
provide [2] 18/25 32/1
provided [1] 26/21
provider [3] 5/13 27/9 27/19
providing [1] 4/3
pull [2] 5/10 27/18
pulled [2] 17/2 40/14
put [3] 10/16 25/2 41/3

**Q**

Q1 [1] 30/18
Q3 [1] 30/18
Q4 [1] 24/8
quarter [1] 22/20
quarterly [1] 11/12
quarters [3] 23/4 23/5 24/20
question [8] 4/4 4/10 4/11 4/24 18/14 29/20

**Q**

question... [2]  29/21 31/16
questions [3]  14/18 38/24 39/4
quite [1]  14/8
quotes [1]  29/13

**R**

RAINWATER [36]  1/6 1/16 3/14 3/24 12/3
 12/4 12/5 12/9 13/5 13/7 14/9 14/11 14/12
 14/13 15/3 15/22 17/16 18/2 21/25 28/14
 30/25 31/12 31/18 31/25 32/10 32/25 36/16
 37/1 37/13 37/19 38/17 39/11 40/2 40/7 40/21
 40/22
Rainwater's [18]  11/12 14/3 14/22 15/6 15/15
 16/14 17/1 17/8 18/8 19/3 19/13 32/14 32/15
 34/3 35/6 36/20 37/24 40/24
random [1]  37/3
range [1]  32/22
rare [1]  38/12
reached [3]  12/16 13/4 13/7
read [5]  4/2 6/9 6/9 11/8 31/13
ready [2]  15/12 28/15
realistic [1]  41/8
reality [1]  36/10
realize [1]  35/13
realized [2]  19/19 27/5
really [12]  5/2 5/11 14/23 22/2 28/3 32/8
 32/12 32/20 33/11 37/24 41/22 42/11
realm [1]  34/17
reason [5]  10/12 11/7 24/10 35/12 38/19
rebut [1]  38/7
recall [1]  24/5
received [4]  32/17 33/15 33/24 34/21
receiving [2]  11/12 34/10
recess [1]  28/17
record [10]  24/8 30/5 31/23 33/2 34/24 35/10
 36/7 41/14 42/21 43/19
recorded [1]  1/19
recovered [2]  39/17 39/18
reduced [1]  43/17
refer [3]  4/21 9/12 11/3
reference [1]  15/2
referenced [1]  15/8
referencing [1]  1/14
referred [2]  15/17 16/3
refrain [1]  33/11
refused [1]  17/9
regardless [1]  37/7
regret [1]  43/5
relate [1]  21/15
related [1]  34/14
relationship [1]  12/3
relatively [1]  5/14
relevant [1]  32/19
reliable [1]  19/7
relied [1]  35/22
relief [1]  42/24
rely [1]  36/8
remainder [1]  5/4
remaining [1]  26/5
remember [4]  36/18 39/22 39/22 39/25
replicate [1]  14/13
report [2]  9/6 28/21
reported [1]  43/15
Reporter [6]  1/12 1/15 1/22 2/4 43/12 43/25
REPORTERS [1]  43/10

reports [1]  11/13
represent [1]  10/4
representations [1]  22/4
represented [4]  12/14 14/9 19/16 26/6
request [9]  4/5 10/1 10/21 26/2 26/13 30/22
 32/5 34/25 39/11
requested [1]  21/8
requests [4]  7/12 10/16 16/7 18/17
require [4]  33/6 33/23 35/8 37/12
required [2]  25/5 36/2
requires [1]  38/15
reschedule [1]  13/14
resolve [1]  41/14
respect [1]  42/24
respond [1]  23/23
responded [1]  20/22
responding [1]  41/6
response [17]  10/25 11/8 11/16 11/22 11/23
 13/23 15/1 15/4 20/1 20/13 23/10 23/25 26/18
 29/9 36/20 40/19 40/20
responses [2]  4/21 10/18
responsive [4]  4/17 4/20 11/21 15/17
rest [3]  16/21 24/10 24/17
restricted [11]  1/12 10/23 11/1 11/9 11/18
 11/18 11/22 12/10 14/2 15/18 23/3
result [1]  9/4
results [2]  21/12 21/19
retail [1]  15/7
retain [1]  23/3
return [1]  28/20
revenue [2]  7/24 9/5
revenues [4]  8/13 10/4 30/18 30/25
review [8]  9/2 22/8 22/22 27/8 32/21 38/23
 41/18 41/20
reviewed [2]  27/20 27/20
reviewing [1]  9/18
right [19]  3/9 3/12 3/15 8/1 10/15 13/14 14/2
 16/5 16/12 19/18 24/13 30/19 31/4 31/10 38/1
 38/10 38/11 41/11 43/2
RMR [2]  1/21 43/24
roughly [1]  11/5
route [1]  3/13
RPR [2]  1/21 43/24
rule [4]  33/5 33/5 33/13 33/23
ruled [1]  29/21
rules [5]  18/5 19/3 30/1 33/22 37/11
run [1]  9/6

**S**

said [32]  5/7 6/9 8/17 8/25 9/19 12/17 12/18
 18/18 20/1 20/10 20/17 20/18 21/3 21/18
 22/12 22/14 22/18 23/16 24/6 24/10 24/16
 25/17 25/18 26/9 29/7 33/10 33/12 38/25 39/2
 39/4 40/25 43/16
same [3]  21/1 38/4 40/2
sandbagging [1]  24/13
SARAH [1]  1/10
satisfied [1]  18/20
satisfy [2]  10/1 39/7
saw [4]  5/17 34/19 34/20 38/22
say [25]  11/10 13/23 13/25 14/4 14/20 14/21
 23/20 23/24 24/2 25/10 25/22 26/5 27/4 27/23
 27/25 29/20 29/22 31/2 32/4 33/2 38/5 38/9
 38/19 41/12 42/11
saying [8]  9/16 13/4 13/6 15/2 16/16 16/16
 23/6 28/1
says [12]  6/2 7/6 7/12 9/13 11/9 15/16 23/2

23/20 30/23 33/13 36/16 39/9
schedule [1]  30/8
scheduling [1]  4/9
school [1]  4/16
scope [1]  35/1
SCOTT [2]  1/17 3/10
screen [3]  12/7 12/7 22/11
screw [1]  26/10
search [1]  39/6
second [5]  3/23 18/1 18/1 31/11 34/12
second-step [1]  34/12
see [31]  4/22 5/11 6/1 6/4 7/5 7/8 7/10 7/11
 8/11 12/8 12/8 12/24 13/14 14/21 15/2 15/5
 15/13 17/25 20/25 21/1 21/9 21/15 21/19 22/8
 22/17 23/7 23/19 24/22 26/22 27/2 27/15
seeing [1]  9/10
seek [1]  42/24
seeking [4]  33/1 34/4 35/16 42/23
seen [3]  9/11 10/1 23/15
SEG [1]  1/5
segregated [1]  16/21
selective [1]  17/12
send [3]  4/18 23/19 33/16
sender [1]  33/25
sensitive [2]  39/15 41/5
sent [17]  5/12 9/14 9/15 10/9 15/8 20/22 21/2
 22/12 22/14 22/16 22/25 23/12 26/8 26/9
 27/12 33/17 42/5
sentence [1]  31/3
separate [2]  14/9 19/17
SEPTEMBER [6]  1/11 2/4 3/1 10/17 23/20
 43/20
serious [1]  5/24
served [2]  4/6 5/14
set [2]  8/24 18/25
sets [1]  3/20
setting [1]  40/11
seven [1]  12/22
SHANE [5]  1/13 3/7 7/18 20/7 23/1
she [5]  20/16 20/18 22/23 22/24 25/3
sheet [1]  25/15
should [15]  9/5 11/16 29/10 30/1 33/25 34/20
 35/9 35/21 36/13 36/13 38/13 42/2 42/13
 42/21 43/2
shouldn't [1]  41/25
show [14]  6/3 17/13 18/21 19/20 20/5 20/19
 20/21 21/11 21/13 21/13 22/2 22/22 23/6
 40/12
showed [1]  15/7
showing [2]  34/8 34/13
shown [1]  24/12
shows [1]  18/2
side [4]  3/6 4/18 6/11 28/5
signed [2]  13/4 13/6
simple [3]  9/6 30/16 31/2
simply [3]  10/21 26/17 29/18
since [3]  10/6 24/16 30/25
single [1]  31/17
Sir [1]  31/22
sitting [1]  20/7
small [1]  25/14
smaller [1]  35/17
smokes [2]  36/9 37/15
smoking [1]  35/18
so [86]
solicit [1]  40/22
solicitation [1]  35/14

**S**

solicitations [1] 40/6
solicited [1] 13/3
soliciting [1] 18/2
some [21] 6/10 10/17 13/9 16/9 17/10 20/19
 22/18 23/3 23/4 24/20 25/3 27/2 32/1 32/3
 32/13 32/25 35/16 35/18 36/9 39/21 41/24
somebody [1] 27/18
somehow [2] 36/1 36/8
someone [1] 17/21
something [12] 8/21 11/18 13/6 13/24 15/1
 15/12 20/3 20/11 27/4 27/7 28/23 34/14
sometime [1] 5/6
soon [1] 36/3
sorry [10] 7/19 8/1 8/6 8/9 17/20 17/23 18/13
 29/5 33/5 40/19
sort [15] 4/6 5/2 5/8 7/9 14/5 14/6 15/25
 22/20 28/22 35/16 36/25 37/5 37/5 38/19
 41/24
sought [1] 34/9
sounds [3] 20/12 27/2 29/17
Southern [1] 18/3
speaking [1] 4/6
specialist [1] 32/13
specific [2] 11/11 16/3
specified [2] 9/21 40/5
speed [1] 14/5
spent [1] 27/22
spreadsheet [2] 22/17 22/23
standard [1] 30/22
start [5] 3/24 4/1 4/3 10/20 11/15
started [6] 4/13 4/24 5/2 5/4 38/23 39/23
starting [1] 18/1
starts [1] 6/24
state [1] 24/16
statement [5] 20/6 25/20 25/24 26/13 31/13
statements [11] 4/2 6/10 20/2 20/9 21/5 23/2
 23/4 24/20 24/22 25/13 25/25
states [3] 1/1 15/5 43/13
Stenograph [1] 43/15
stenography [1] 1/19
step [1] 34/12
still [12] 7/3 8/11 9/4 9/6 9/20 10/10 16/19
 18/14 18/23 22/11 24/13 31/19
stop [1] 25/18
storage [2] 32/11 32/14
stored [1] 15/10
strategy [1] 37/15
stretching [1] 24/22
stricken [2] 35/10 42/21
strong [1] 26/16
stuff [13] 5/23 8/18 10/6 12/15 14/11 16/14
 16/18 19/7 19/18 20/6 21/23 22/7 22/9
submit [1] 22/13
submitted [2] 7/4 18/15
subpoena [2] 4/24 40/20
subsequent [2] 11/17 34/10
sufficient [3] 11/14 18/24 19/1
suggest [1] 25/8
suggesting [1] 27/6
suggestion [2] 5/17 24/12
suit [2] 5/2 5/3
summaries [1] 6/25
summary [3] 7/9 7/22 7/25

summoned [1] 28/20
Sunday [1] 27/16
super [2] 30/16 31/2
supplement [6] 7/12 7/13 7/15 8/18 9/22
 30/14
supplemental [3] 10/25 26/23 26/23
supplemented [2] 9/23 9/25
support [1] 34/6
supported [2] 35/24 38/16
supposed [3] 8/5 36/22 36/24
sure [16] 4/17 6/12 6/17 14/23 16/11 19/25
 20/21 25/5 28/25 29/4 30/2 33/11 37/16 38/8
 41/19 42/22
suspect [2] 38/1 38/3
SW [1] 1/23
system [5] 15/11 15/11 15/24 18/6 24/23
systems [1] 15/10

**T**

tab [10] 6/24 6/25 7/17 7/22 8/2 8/3 8/8 9/3
 17/14 26/6
TABLE [1] 2/1
take [6] 5/22 16/13 26/19 28/11 28/16 29/23
taken [2] 28/18 40/7
takes [2] 23/25 27/18
taking [2] 14/8 20/8
talk [2] 7/2 16/8
talking [5] 8/19 8/20 9/9 27/10 34/3
team [1] 9/2
Ted [1] 1/23
tell [7] 9/23 18/7 24/9 25/7 26/24 41/13 41/16
telling [1] 13/18
tells [2] 21/16 39/12
ten [1] 36/17
ten-day [1] 36/17
tens [1] 14/7
terms [1] 26/23
terrible [1] 21/13
testified [1] 40/2
testimony [1] 38/16
text [8] 31/17 39/9 39/15 39/16 39/17 40/10
 40/25 42/4
texts [2] 40/21 41/4
than [3] 21/4 27/16 28/23
thank [8] 6/5 7/20 16/5 19/10 28/10 31/9
 38/11 43/6
that [300]
that's [36] 4/11 5/15 5/20 5/24 8/10 9/3 12/9
 12/18 13/16 14/23 15/11 19/9 20/14 21/14
 21/18 21/18 21/19 24/1 24/13 25/2 25/12 27/7
 27/25 27/25 29/18 30/23 32/8 33/21 33/21
 34/17 37/14 38/10 39/5 39/10 43/1 43/1
their [9] 4/20 5/17 13/2 14/1 15/7 15/24 18/6
 25/10 26/1
them [60]
then [31] 4/8 4/20 4/25 5/1 5/3 5/7 5/12 5/13
 8/18 8/25 9/23 11/10 12/12 12/20 13/22 20/3
 20/23 20/23 21/11 22/25 23/8 23/23 25/22
 26/25 27/12 27/19 27/23 34/9 37/10 38/23
 39/15
Therapy [1] 18/3
there [42] 6/10 7/5 8/11 9/25 10/24 11/15
 13/14 14/4 14/7 17/25 19/2 19/11 19/12 19/18
 20/13 21/22 22/19 22/23 23/4 23/4 24/19
 26/17 27/17 30/13 31/14 31/18 32/21 33/20
 34/7 34/8 34/11 34/17 34/17 35/15 36/6 36/22
 37/5 37/10 37/18 40/10 40/15 41/11

there's [19] 5/4 8/5 19/6 20/10 21/23 21/24
 22/8 22/9 24/10 32/3 33/18 34/2 34/16 34/16
 37/8 37/17 41/7 42/14 42/15
therefore [1] 11/13
these [27] 7/11 8/12 8/16 8/25 9/2 9/5 10/16
 13/3 15/13 15/14 15/22 18/17 21/3 21/9 21/10
 21/11 21/13 23/9 23/10 23/11 24/11 24/21
 24/22 25/2 36/14 40/18 42/6
they [156]
they're [4] 15/10 18/4 18/23 35/25
they've [4] 13/20 18/21 19/21 33/10
thing [8] 5/21 7/14 14/6 14/24 22/20 27/5
 28/6 30/4
things [10] 9/21 12/5 22/18 23/10 23/21
 24/19 25/9 29/19 30/13 36/23
think [57]
third [3] 19/8 32/12 36/22
this [90]
thoroughly [1] 42/8
those [19] 4/18 5/4 5/12 6/4 9/21 11/14 14/17
 15/6 15/9 15/13 15/19 15/25 16/1 29/12 33/3
 33/11 33/12 33/19 35/9
though [2] 18/22 41/24
thought [2] 5/21 23/16
thousands [1] 14/7
thread [1] 18/2
through [7] 19/24 20/4 28/7 29/3 37/5 39/13
 40/14
time [13] 5/3 9/10 10/7 12/6 14/4 14/21 16/2
 17/10 18/3 27/18 28/16 40/16 43/6
times [2] 9/11 33/10
timesheets [1] 5/23
today [5] 18/21 20/24 24/12 26/22 41/14
told [6] 9/24 13/11 18/8 23/11 29/7 29/11
ton [1] 8/12
too [1] 6/16
took [5] 4/23 14/16 16/23 27/13 32/14
top [1] 23/1
touching [1] 38/19
town [1] 30/8
transcript [7] 1/10 1/13 1/16 1/17 1/10 1/20
 43/18
transcripts [1] 1/11
treat [1] 36/24
trial [1] 33/9
trickle [1] 4/7
tried [3] 27/7 29/17 37/14
troubled [3] 11/16 11/16 26/15
troubling [1] 33/21
true [9] 5/20 16/22 24/1 25/9 25/12 27/25
 28/5 30/24 43/18
truth [1] 19/15
try [6] 13/10 17/20 26/1 27/11 27/20 27/22
trying [8] 13/9 24/10 35/12 35/17 36/8 39/20
 40/22 42/3
turned [5] 16/14 16/22 17/2 19/5 32/10
Turner [1] 1/23
turning [2] 32/9 32/23
turns [1] 39/12
two [6] 3/20 6/18 7/8 9/15 16/24 23/15
types [1] 15/25
typewritten [1] 43/17

**U**

U.S [1] 1/22
under [6] 8/4 8/8 13/6 19/4 30/1 37/11
underhanded [1] 27/7

**U**

**understand [10]** 6/10 9/16 10/24 11/9 24/1 25/23 26/13 31/14 32/3 33/13
**understanding [5]** 14/5 15/13 19/16 36/6 42/6
**Understood [1]** 6/15
**unduly [1]** 37/6
**UNITED [2]** 1/1 43/13
**unless [1]** 10/12
**until [6]** 5/18 14/3 18/24 19/4 25/19 27/24
**up [12]** 5/6 6/18 14/5 16/1 20/8 21/5 24/12 26/10 27/15 38/3 40/11 40/12
**uploaded [1]** 27/19
**Upon [1]** 32/21
**us [21]** 7/16 7/18 8/18 8/21 8/21 8/23 9/1 9/14 9/16 9/23 9/24 12/17 17/4 18/8 18/22 19/1 20/11 21/10 24/14 25/9 30/25
**USB [2]** 32/10 32/14
**use [5]** 24/4 30/21 36/7 37/14 37/16
**used [7]** 4/14 30/16 31/1 34/2 34/23 37/25 39/14
**uses [1]** 17/4
**using [1]** 34/10
**usually [1]** 32/6

**V**

**various [1]** 10/3
**very [2]** 26/16 32/4
**via [2]** 5/14 5/14
**Vickery [3]** 5/1 21/2 24/25
**view [1]** 7/6

**W**

**wait [1]** 38/25
**waived [2]** 36/1 41/9
**waiver [9]** 20/21 21/8 21/9 21/22 37/9 37/17 38/20 39/5 39/8
**walk [2]** 20/3 29/3
**want [28]** 6/1 8/19 10/15 12/17 13/8 13/16 16/7 17/13 19/12 20/3 20/5 20/21 21/7 21/9 21/14 22/8 24/17 24/23 25/7 25/7 27/4 27/21 29/3 30/19 32/1 33/2 41/17 43/1
**wanted [4]** 9/12 11/15 14/18 24/7
**was [58]**
**wasn't [2]** 32/20 40/15
**way [16]** 4/13 4/16 13/10 15/4 17/12 18/10 19/6 19/7 21/6 25/17 28/8 37/2 37/2 37/7 37/20 39/22
**ways [1]** 10/3
**we [172]**
**we'll [4]** 4/1 9/23 24/17 24/18
**we're [27]** 4/22 7/12 7/13 8/17 8/25 9/4 9/9 12/14 13/9 13/14 18/21 20/7 20/17 23/17 24/13 27/1 28/11 28/17 29/5 29/16 29/16 30/20 38/3 39/2 41/20 41/22 43/7
**we've [5]** 10/3 19/20 25/24 25/25 35/1
**WEALTH [4]** 1/7 1/18 3/22 10/22
**websites [1]** 24/25
**week [2]** 30/7 30/10
**weekend [2]** 9/3 26/10
**well [13]** 4/12 4/23 9/24 10/2 23/11 24/5 25/12 32/16 35/10 36/2 38/14 38/20 39/2
**went [5]** 8/14 13/9 20/6 39/13 40/14
**were [37]** 4/17 4/19 4/19 5/2 5/14 5/19 7/3 8/13 8/14 9/22 10/14 14/2 14/5 14/8 14/12 15/6 15/17 16/10 18/18 19/11 19/12 20/2

21/12 22/19 23/4 23/5 23/11 24/9 27/15 29/12 31/19 33/10 36/24 39/10 40/10 43/5 43/17
**what [76]**
**what's [12]** 9/16 9/20 19/2 21/22 22/12 22/13 22/14 23/1 24/18 26/12 28/21 36/20
**whatever [9]** 8/25 14/17 21/14 24/7 24/24 28/9 32/18 42/23 42/24
**when [18]** 9/15 11/8 11/17 17/7 19/3 28/15 29/1 30/23 30/25 32/4 32/13 33/13 33/24 34/9 34/19 39/22 40/14 40/25
**whenever [2]** 17/6 34/20
**where [12]** 9/13 10/3 14/4 15/24 17/2 19/19 21/24 22/23 23/17 24/20 29/19 37/19
**Whereupon [1]** 28/18
**whether [6]** 18/7 31/17 31/18 33/18 39/6 41/17
**which [16]** 4/14 4/16 9/21 12/11 12/20 15/17 16/3 21/5 23/9 25/16 32/11 35/22 36/5 37/21 38/13 40/4
**while [5]** 23/25 27/3 27/13 28/11 32/11
**who [3]** 5/12 14/1 14/3
**whoever [1]** 15/23
**whole [4]** 13/2 17/10 18/3 32/22
**why [13]** 9/25 9/25 11/22 11/22 13/22 13/22 13/23 13/25 19/19 25/18 32/8 35/12 38/12
**will [27]** 1/12 6/3 6/25 7/5 7/8 7/17 10/18 15/22 19/24 20/11 20/25 22/13 24/11 24/11 24/16 24/19 28/14 28/15 29/8 29/21 30/6 31/5 32/23 38/2 42/9 42/11 42/18
**willing [2]** 22/7 26/3
**win [1]** 34/18
**window [1]** 36/17
**wish [3]** 31/8 42/19 42/24
**withholding [1]** 41/24
**without [1]** 3/15
**won't [1]** 25/18
**word [1]** 5/22
**words [1]** 39/14
**work [1]** 33/9
**working [1]** 9/20
**worry [1]** 21/16
**worth [1]** 14/13
**would [57]**
**wouldn't [2]** 35/3 37/25
**wrong [1]** 18/21

**Y**

**y'all [1]** 28/6
**yeah [5]** 3/18 16/11 19/5 38/9 39/13
**year [1]** 10/8
**yes [7]** 7/19 8/8 17/22 20/18 28/10 30/11 36/21
**yet [4]** 9/19 9/20 10/2 26/17
**you [173]**
**you'll [2]** 20/14 29/8
**you're [3]** 19/4 28/1 29/11
**you've [2]** 9/21 13/17
**your [53]**